## STATE OF HAWAII *v.* ROBERTA K. KAUPU ADRIAN

### No. 4742.

APRIL 3, 1969.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND CIRCUIT JUDGE OKINO ASSIGNED BY REASON OF VACANCY.

OPINION OF THE COURT BY LEVINSON, J.

The defendant-appellant was convicted in a jury trial of embezzlement under an indictment charging her with

having fraudulently converted to her own use and benefit the sum of $160.93 belonging to her hotel employer. We reverse.

The defendant was employed as a cashier in the Naniloa Hotel on the island of Hawaii. One of her duties was to receive payments from guests who were checking out. The usual procedure upon receiving such payments was to place a guest "account card" containing up-to-the-minute charges owed by the guest into an office machine for recording. All of the charges and payments for each room were recorded on a cumulative tape in the machine as well as on the individual account cards. A routine daily comparison of the cumulative tapes of August 15 and 16, 1967 disclosed that some of the account cards of guests who had checked out of the hotel on the 16th were missing and that charges against them were not recorded as paid. During the day of the alleged embezzlement (August 16, 1967), the defendant was on duty between 7:00 a.m. and 3:00 p.m. She had been relieved between 11:00 a.m. and 11:30 a.m. for a break.

After the discovery that the account cards were missing, one of the Mainland guests whose account indicated charges unpaid was thereafter billed by the hotel for the amount owing. The guest responded by sending a letter stating that she had paid the money and enclosing a photocopy of a receipt she had received showing a rubber-stamped "P-A-I-D" mark, initialed by "R.A." The initials of the defendant are R.A. It was not the usual practice of the hotel to mark paid statements in this way, since it was the function of the office machine to record such payments. The rubber stamp was to be used only in the event of power failure, or in the event the recipient of the payment did not know how to operate the machine. There was no evidence that either of these conditions existed on the 16th. Over the defendant's objections based on hearsay,

the letter and the copy of the receipt were admitted into evidence.

As part of the police investigation of the case, a secretary working in the Detective Bureau wrote letters to several other Mainland guests who had checked out on the 16th, whose account cards were missing, and whose charges were not recorded as paid. The letter requested them to mail to the police for use as evidence any receipted statements they had. Several responded by sending letters enclosing similarly rubber-stamped and initialed receipts, or letters without receipts, or merely receipts. All of these were admitted into evidence over the defendant's hearsay objections during the testimony of the Police Department employee who had sent out the original requests.

Also, in the course of the police investigation, a teletype message was sent by the Hawaii Police Department to the Honolulu Police Department. In response to that message, the Honolulu Police Chief secured a similarly stamped and initialed statement from another guest apparently then living in Honolulu who had checked out on the 16th. It was enclosed in a letter in which the Chief wrote that the guest said that he and his wife checked out of Naniloa during the morning of August 16, 1967 and that a "part-Hawaiian female clerk handled the transaction." These documents were also admitted into evidence over the defendant's hearsay objections.

At a time after all of the above-described documents were admitted, the defendant's counsel moved that the court reconsider their admissibility and exclude them on two bases: (a) they constituted inadmissible hearsay and (b) their admission denied the defendant's constitutional right to be confronted by witnesses against her. The motion was denied, and the denial is specified as error.

During the trial, two of the State's witnesses were asked on cross-examination whether they had given the

police or the prosecution any written statement and they responded negatively. When asked whether they had discussed the case at all with the police, they answered affirmatively. At this point during both cross-examinations, the defendant, purportedly pursuant to Hawaii Rules of Criminal Procedure, Rule 17(h), moved for the production of any statement of the witnesses in the possession of the State which related to the subject matter of their direct testimony. An alternative motion was that the court grant an *in camera* inspection of those statements to determine whether any favorable evidence was being withheld. These motions were taken under advisement, but were later denied after the prosecution rested. The denial of these motions is specified as error.

### 1. In Camera *Inspection*

The trial court did not err in denying the motion for an *in camera* inspection. It appears that taking the motion under advisement, rather than ruling on it when it was made, was error, but this error was harmless.

H.R.Cr.P., Rule 17(h),[1] almost a verbatim copy of the

---

[1] H.R.Cr.P. Rule 17(h) reads in pertinent part as follows:

(h) Statements and Reports of Government Witnesses.

(1) When Subject to Production. No statement or report in the possession of the State which was made by a government witness . . . to an agent of the government shall be the subject of . . . inspection until said witness has testified on direct examination in the trial.

(2) Order for Production. After a witness called by the State has testified on direct examination, the court shall, on motion of the defendant, order the State to produce any statement (as hereinafter defined) of the witness in the possession of the State which relates to the subject matter as to which the witness has testified . . . to be delivered directly to the defendant for his examination and use.

(3) Limitations. If the State claims that any statement ordered to be produced under this subdivision (h) contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the State to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. . . . Whenever any statement is delivered to

Jencks Act, 18 U.S.C. 3500, specifies that the order to produce any statement (as defined by subsection (5)) will occur only after the witness called by the State has testified on direct examination and will require only those portions of the statement produced which relate to the matters testified to by that witness. It is quite apparent that one of the purposes behind the promulgation of the Rule is to give the defendant an effective weapon for use in cross-examination in order to impeach that witness. Such was the purpose of the Jencks Act. *Campbell* v. *United States,* 365 U.S. 85, 92 (1961). The Rule provides in subsection (3) that after production of the statement, the defendant may apply to the court for a recess of proceedings in order to prepare for its use in the trial. The action of the court in this case, in taking under advisement the defendant's motion derogates from the Rule's purpose. Any delay in the production of an eligible statement until a time after the witness who is to be impeached has left the stand or, perhaps, until the close of the prosecution's case, prejudices the defendant. The impeachment of a witness, if it is to occur at all, is most effective when it follows the direct testimony to be impeached.

Although an inquiry and *in camera* inspection by the court out of the hearing of the jury is required when there

---

a defendant pursuant to this subdivision (h), the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

    \*   \*   \*   \*

(5) "Statement" Defined. The term "statement," as used in paragraphs (2), (3) and (4) hereof in relation to any witness called by the State, means:

(i) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(ii) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the government and recorded contemporaneously with the making of such oral statement.

is doubt as to whether a particular statement must be produced under the Rule, *see Palermo* v. *United States,* 360 U.S. 343, 354 (1959), *Campbell* v. *United States,* 365 U.S. 85, 92, we have found no authority, and the defendant has cited none, in which it was held that the trial court must first make an independent investigation to determine whether any statement of any kind exists followed by an *in camera* inspection to see whether its production is compelled by the Rule. In this case, the witnesses whose alleged statements were being sought were very definitely negative in response to questions directed toward establishing such a statement.[2] Since there was no statement of any kind established for the court to inspect *in camera*, it was not error for the court to deny the defendant's motion.

## 2. *Right of Confrontation*

Both the sixth amendment of the United States Constitution and article I, section 11 of the Hawaii Constitu-

---

2 The questioning of witness Davis went as follows:

Q Mr. Davis, did you make any sort of statement of any kind for the benefit of the Police Department or for the prosecution? Did you give any sort of statement to them?
A A statement? What you mean by that?
Q Regarding this particular matter. Did you give them a statement of any kind?
A I don't understand what you —
Q Did you give them a written statement that you signed?
A No.
Q Did you talk with the representative from the Hawaii County Police Department or with Mr. Shimokusu or somebody from the County Attorney's Office?
A Yes, I did talk with police officers.
Q Do you recall which police officer you talked to?
A Oh, this was Sergeant Victorine. I think there was also Sergeant Hall. I'm not sure if that's his correct name.
Q And did that relate to this particular matter?
A Yes it did.
* * * *
[Out of the jury's presence the Court asked] Q: My understanding is you discussed this thing orally with the Police Department?
[The Witness] A: Well, this had been investigated. When they were investigating the loss of revenues, I had discussed it and bring them

tion provide that "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Since the confrontation clause of the sixth amendment is now applicable to the states, *Pointer* v. *Texas*, 380 U.S. 400 (1965), the Supreme Court's interpretation of that provision is binding in this State and upon this court.

As we have recently said, the "right of confrontation is one of the fundamental personal rights guaranteed to an accused . . . ." *State* v. *Casey*, 51 Haw. 99, 451 P.2d 806 (1969). The primary right secured by the confrontation clause is the right of cross-examination, *Pointer* v. *Texas, supra* at 406-07, a right which this court has recognized is basic to our judicial system. *State* v. *Brooks*, 44 Haw. 82, 89, 352 P.2d 611, 616 (1960). The Supreme Court has recently said that "a denial of cross-examination without waiver . . . would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Smith* v. *Illinois*, 390 U.S. 129, 131 (1968), quoting *Brookhart* v. *Janis*, 384 U.S. 1, 3 (1966). The purpose of the confrontation rule was stated many years ago:

The primary object of the constitutional provision

---

up to date on what had taken place and on how we had discovered this.

The questioning of Witness Ah Hee was as follows:

Q Mrs. Ah Hee, did you prepare any sort of a written statement of any kind for the police, or Prosecutors' Office, or anybody?
A No.
Q Did you talk with any members of the Police Department or any representatives from the Prosecutors' Office about this matter?
A Yes.
Q Before coming to Court?
A Yes.
Q Were they taking notes at that time?
A No.
Q Who did you talk to, if you recall?
A Mr.—the lawyer and the Detective Victorine.
Q Sergeant?
A Sergeant.
Q Detective Victorine?
A (nodding).

in question was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. *Mattox* v. *United States,* 156 U.S. 237, 242-43 (1895).

One is hard put to find a more extreme case than the present one in which a defendant was denied the right to be confronted with the witnesses against him. An essential part of the case against the defendant is contained in the letters and receipts submitted by absent witnesses. At no time did the defendant have the opportunity to cross-examine those alleged guests concerning any of the information contained in the letters or receipts.

Neither the Hawaii Constitution nor the United States Constitution is satisfied by the prosecution's presentation of a witness who is not the declarant. Since the right to be "confronted" in the constitutional sense includes the opportunity to cross-examine, "witnesses" must, therefore, mean the *declarants* rather than *any witnesses* who relate the words or substance of what the declarants said. Indeed, if the Sixth Amendment were otherwise construed, the defendant's right of cross-examination would be emasculated. Note, *Preserving the Right to Confrontation—A New Approach to Hearsay Evidence in Criminal Trials,* 113 U. Pa. L. Rev. 741, 743 (1965). Of course, this court would, in appropriate cases, permit certain exceptions to the right of confrontation such as admitting dying declarations against an accused, *Pointer* v. *Texas, supra* at 407, and testimony of an unavailable witness who gave testi-

mony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant, if the state has made a good faith effort to obtain the presence of the witness. *Barber* v. *Page,* 390 U.S. 719, 722, 724 (1968).

Thus, the fact that the defendant had the opportunity to cross-examine the employees of the hotel and the Hawaii Police Department does not mitigate the egregious denial of due process suffered by the defendant. Their testimony tended to show only that the documents admitted into evidence were obtained in response to a request. Cross-examination of those witnesses would not be effective in testing the truth of the documents themselves.

The inferences to be drawn by the jury from the letters and receipts were far too critical in underlying the jury verdict to permit them to constitute evidence without permitting the defendant to test their truth. Not one of the hotel guests whose payments are alleged to have been embezzled was at the trial. The mere absence of a witness from the jurisdiction is not a sufficient ground for dispensing with confrontation. *Barber* v. *Page, supra* at 723. This conviction by correspondence cannot stand.

We find it unnecessary to decide the hearsay issues in this case because the right of confrontation supersedes the effect of any rules of evidence.

The conviction is reversed and the case is remanded for a new trial.

*George S. Yuda (Ushijima, Nakamoto & Yuda* of counsel) for defendant-appellant.

*Mamoru Shimokusu,* Deputy County Attorney, County of Hawaii (*Yoshito Tanaka,* County Attorney, with him on the brief) for plaintiff-appellee.