Thomas A. **DABOUL**, Petitioner-Appellant,

v.

Walter E. **CRAVEN**, Warden, Respondent-Appellee.

No. 23066.

United States Court of Appeals, Ninth Circuit.

July 10, 1970.

Peter L. Sanford (argued), of Collins, Hays, Stewart, Sanford & Berg, San Jose, Cal., Thomas A. Daboul, Represa, Cal., for petitioner-appellant.

Russell Iungerich (argued), Deputy Gen., Wm. E. James, Asst. Atty. Gen., Atty. Gen., Thomas C. Lynch, Atty. Jack K. Weber, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before MADDEN,* Judge, United States Court of Claims, and DUNIWAY and KILKENNY, Circuit Judges.

**J. WARREN MADDEN, Judge.**

On June 12, 1964, the appellant DaBoul was found guilty, after a jury trial in a California Superior Court, on five counts of an information charging second degree burglary. On June 7, 1965, a California Court of Appeal affirmed the convictions. People v. DaBoul, 234 Cal.App.2d 800, 44 Cal.Rptr. 744. On February 26, 1968, the appellant filed the instant petition for a writ of habeas corpus, in the appropriate United States District Court. That Court denied the petition on March 13, 1968, but on April 10, 1968, issued a certificate of probable cause for an appeal to this court. On April 18, 1968, the appellant filed his notice of appeal.

In appellant's Statement of Issues, in his brief, the first issue stated is "was appellant unlawfully arrested and searched?" The evidence introduced by the prosecution as to count five was, in brief: On September 8, 1963, Esther Freshman and her sister were living in an apartment. The door-bell rang but they decided not to answer it as they were not dressed to receive callers. Esther Freshman, walking toward the outer door of the apartment, heard a noise such as would be made by someone working on the door. Then the door opened and a man entered the apartment. In answer to questions the man said the door seemed to be open, that he thought he heard someone say "come in", and that he was looking for a Mrs. Rose Kaplan. No such person lived in the building. After the man left, Miss Freshman and her sister discovered shavings and paint on the door-sill and a cut in the door. They called the manager of the building who called the police. Police Officer Arujo came and talked to Esther Freshman. She described the man who had entered her apartment as approximately five feet tall, weighing about 150 pounds, of dark complexion and wearing dark trousers and a white shirt, appearing to her to be Jewish and

---

* Honorable J. Warren Madden, Senior Judge, United States Court of Claims, sitting by designation.

wearing tinted spectacles. The officer took note of some pry-marks on the door-jamb.

Officer Arujo looked around the surrounding area for a person fitting Miss Freshman's description of the man who had entered her apartment. At about 2:30 P.M. he saw such a person walking on Second Street. That person was the appellant. The officer stopped his motorcycle, approached the appellant and asked him for identification. As appellant reached into his left rear pocket to produce papers, the officer saw a small pry bar protruding from appellant's right rear pocket. The officer also observed that appellant's front jacket pockets were bulging. The officer started to search appellant, but appellant pushed the officer's hands away, and refused to say whether he had any weapons in his pocket. Then the officer told appellant that he was under arrest and again attempted to search him. Appellant pulled away, and there was a scuffle. Another officer, Bonar, tried to help Officer Arujo. Bonar lost his balance and fell. Appellant broke loose and started to run. Arujo followed him to the intersection, where appellant tripped. Numerous pieces of jewelry and some silver dollars fell from appellant's pockets. Appellant had more than $4,000 in cash on his person. His sunglasses had been broken in the scuffle with the officers.

■ The arrest of appellant was lawful. A citizen had complained to Officer Arujo of a criminal entry into her apartment; she had described the intruder, the officer had searched the area and observed a man who answered the description, Draper v. United States, 358 U.S. 307, 312–313, 79 S.Ct. 329, 3 L.Ed. 2d 327; Gravenmier v. United States, 380 F.2d 30 (CA 9, 1967), who had, emerging from his pocket, an instrument of the kind which might have been used to jimmy the door and leave the scars which the officer had just observed, and who forcibly resisted even a superficial search of his bulging jacket pockets, Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889.

As to the burglary charged in count 1, the evidence was that the door of a locked apartment had been opened by tampering with the lock, that numerous articles had been stolen, that appellant's finger prints had been found in the apartment. The evidence in support of count no's 2 and 3 was similar to that supporting count 1, and in addition some of the objects stolen in those burglaries were later found in the appellant's possession. As to count 4, the events were similar, but there is a question as to the admissibility of some of the evidence presented by the prosecution on that count. Except as to that question of admissibility, the appellant does not claim, as to any of the counts, that there was an insufficiency of evidence to support the verdicts and judgments.

■ In support of count 4 of the information, the prosecution presented, in the state trial court, the transcript of the testimony given, at the preliminary hearing, by two victims of the burglary charged in that count. That hearsay evidence was admitted. The pertinent law of California at the time the appellant was convicted in the trial court (1964), and at the time his conviction was affirmed by the California District Court of Appeals, (1965) was embodied in California Penal Code § 686(3). Under that statute prior testimony could be introduced in a subsequent trial if it was shown that the witness was "out of the jurisdiction" or that he "could not, with due diligence be found within the state". In People v. Carswell, 51 Cal.2d 602, 605, 335 P.2d 99 (1959), it was held that if the witness was out of the state, the "due diligence" requirement was not applicable. In People v. Dozier, 236 Cal.App.2d 94, 105, 45 Cal.Rptr. 770 (1965), and other California cases after Carswell, the Courts held that the existence of permissive legislation to obtain witnesses from out of state, such as the "Uniform Act" to secure the Attendance of Witnesses From Without a State in Criminal Proceedings, 9 Uniform Laws Ann., 91," did not affect the doctrine of the Carswell case. The Uniform Act,

with a modification not relevant here, was enacted in California in 1937, and is in the California Penal Code, § 1334.1– 1334.6.

The Supreme Court of the United States, in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), held that the prosecution in a criminal case could not introduce the transcript of testimony given by a witness at a preliminary hearing, which witness did not take the stand in the trial in which the transcript is offered, unless the prosecution could show that, although the witness who gave the testimony which was embodied in the offered transcript was outside the state at the time of the instant trial, the prosecution had made a "good faith effort" to obtain his personal appearance at the instant trial. The Court indicated that if the prosecution fails to make use of the Uniform Act referred to above, it has not made the required "good faith effort" and cannot use the prior testimony. In Berger v. California, 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969), the Court held that its ruling in Barber v. Page is retroactive.[1]

The facts in the instant case, as both parties agree, make relevant the constitutional problem of confrontation under the Sixth and Fourteenth Amendments. The appellant's counsel objected, in the California trial court, to the admission in evidence of the transcript of the former testimony, which evidence is now in question in this habeas corpus proceeding. The California trial court, and the California appellate court held that the evidence was admissible under the California statute as that statute had

been interpreted by California's Supreme Court. Thereafter came Barber v. Page, supra, holding, in effect, that such a statute, so interpreted, was federally unconstitutional. That issue which did not exist until Barber v. Page, supra, created it, has not been presented to the California courts by this appellant.

In Darr v. Burford, 339 U.S. 200, 203, 70 S.Ct. 587, 589, 94 L.Ed. 761 (1950), the Court said that the issue of exhaustion of state remedies was "crucial to the relationship between the state and federal sovereignties in the exercise of their coordinate power over habeas corpus." The Court further said at page 204, 70 S.Ct. at p. 590:

> "* * * But since the 1867 statute granted jurisdiction to the federal courts to examine into alleged unconstitutional restraint of prisoners by state power, it created an area of potential conflict between state and federal courts. As it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, the federal courts sought a means to avoid such collisions. Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

In Palmer v. Comstock, 394 F.2d 395–396 (1968), this court held that state appellate courts should not be by-

1. Although it is not directly relevant to our instant problem, we call attention to the decision of the Supreme Court, announced on June 23, 1970, in the case of California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489, reversing the decision of the Supreme Court of California in People v. Green, 70 Cal. 2d 654, 75 Cal.Rptr. 782, 451 P.2d 422 (1969). The decision of the Supreme Court of California is relied on in the appellant's brief. The Supreme Court's

decision is to the effect that prior extrajudicial statements made by a witness who is present at the trial, and thus can be cross-examined with regard to those statements, may be treated as substantive evidence of the facts previously stated, and that such treatment is not, as the Supreme Court of California had held, a violation of a party's constitutional right to confrontation with the witnesses against him.

passed in a situation in which the Supreme Court decision relied upon by the appellant had been announced after the state courts had last considered the appellant's case and had, therefore not had an opportunity to consider the appellant's claims in the light of that opinion.

For an inferior federal court to, in effect reverse a decision of a state appellate court in a situation such as that illustrated by Palmer v. Comstock, *supra*, or by our instant case, would be a departure from the practice of comity emphasized in Darr v. Burford, *supra.* The Supreme Court's decision in Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), is distinguishable. The federal doctrine upon which the habeas corpus petitioner relied had been in existence for several years before the petitioner took his appeal to the state appellate court.

■■ The appellant contends that he was subjected to an unfair line-up at which he was identified by a victim of the alleged burglary charged in count 4 of the information, and was thereby denied due process of law. This claim was not asserted in the appellant's petition for a writ of habeas corpus, filed in the United States District Court, which court's decision dismissing that petition is the subject of the instant appeal. For that reason the appellant does not have the right to assert that claim in this court. Thomason v. Klinger, 349 F.2d 940–941 (CA 9, 1965). Furthermore, we think that the question of the fairness of the line-up was not adequately presented to the California courts in the appellant's trial and appeal in those courts. In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Supreme Court said:

> * * *. A claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it.

In Foster v. California, 394 U.S. 440, at p. 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), the Court said:

> "But in declaring the rule of *Wade* (388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149), and *Gilbert* (388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178), to be applicable only to lineups conducted after those cases were decided (Stovall v. Denno, supra), we recognize that, judged by the totality of the circumstances, the conduct of the identification procedure may be so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process of law."

Both Stovall v. Denno, *supra*, and Foster v. California, *supra*, were decided after the California courts had disposed of the appellant's case. The California courts therefore had. no opportunity to deal with the claim of violation of due process in the line-up procedure, with the benefit of the Supreme Court's important pronouncements in Stovall and Foster. Since we are deciding, with regard to the issue of confrontation in this same count 4 of the information in the appellant's case, that the appellant has not exhausted his state remedies, we make the same disposition of this line-up issue.

■ The appellant asserts that the admission of the transcript of the testimony given at the preliminary by a witness who was absent from the state at the time of the trial, "cut a swath through all five counts of burglary and tainted the identification element in each of those counts." We disagree. There was ample admissible evidence of guilt as to the burglaries charged in counts 1, 2, 3 and 5. There was fingerprint evidence as to two of the counts, jewelry robbed from apartments and found in the possession of the appellant when arrested, as to two of the counts; identification by observation in the act of unlawful entry, as to one count. In our view, it is clear beyond a reasonable doubt that the admission of the transcript of former testimony, involved in count 4 of the·information had no appreciable effect upon the jury's verdicts as to counts 1, 2, 3 and 5 of the informa-

tion. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The decision of the United States District Court, denying appellant's petition for a writ of habeas corpus, is affirmed on the merits, as to counts 1, 2, 3 and 5 of the information. As to count 4, the denial of the appellant's petition is affirmed on the ground of appellant's failure to exhaust his state remedies.