STATE OF HAWAII, Plaintiff-Appellee, *v*. THELMA M. KIM, Defendant-Appellant

NO. 5477

MARCH 7, 1974

RICHARDSON, C.J., LEVINSON, KOBAYASHI and OGATA, JJ., and CIRCUIT JUDGE FUKUSHIMA ASSIGNED TEMPORARILY BY REASON OF VACANCY

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant, Thelma M. Kim (hereinafter appellant), was charged with, and convicted of two counts of negligent homicide in the first degree.[1] The charges arose out of events occurring on the evening of December 24, 1971. During this particular evening, a serious automobile accident occurred on Fort Weaver Road, involving one car containing appellant and her husband and one car containing Art and Myra Newman. As a result of the collision, the Newmans were killed.

Appellant alleges in this case that the trial court committed two errors, each of which requires the reversal of the judgment of conviction. Appellant argues (1) that it was a reversible error to admit into evidence, over the objection of the appellant, certain portions of the pre-trial hearing testimony of a witness absent from this jurisdiction without first showing any good faith effort by the state to obtain the presence of the witness, and (2) that it was also a reversible error for the trial court to deny the appellant's motion for judgment of acquittal at the close of the state's case, since the evidence did not show that the appellant was the driver of the vehicle that caused the death of the Newmans.

I.

The state attempted to show the appellant's grossly negligent operation of the lethal motor vehicle through proof of her intoxication at the time she was driving the vehicle in question.[2] For this purpose the state offered in evidence a

---

[1] Appellant was convicted under the former HRS § 748-9 (a), which provided as follows:

§ 748-9 Negligent homicide: degrees; penalties. (a) Every person who by the operation of any vehicle in a grossly negligent manner causes the death of another, shall be guilty of the crime of negligent homicide in the first degree and shall be imprisoned at hard labor not more than five years.

This section was in force on December 24, 1971, up to December 31, 1972, as of which date it was repealed by SLH 1972, Act 9, § 1.

[2] In instructions to the jury, the Court accurately cautioned the fact finders as follows:

The mere fact that an automobile accident happened, considered alone, does not permit you to draw the inference that the accident was proximately caused by the Defendant's gross negligence.

portion of a transcript made at a pre-trial hearing on a motion made by appellant (and granted by the court) to suppress results of a blood alcohol test performed on appellant shortly after the accident. The portion of the transcript offered was the testimony of Dr. Wally, who performed the blood alcohol test on the appellant following her transport to St. Francis Hospital for treatment of injuries sustained in the automobile collision.

The state made an attempt to lay the necessary foundation for the admission at trial of Dr. Wally's pre-trial hearing testimony. For the purpose of laying this foundation, the state called as a witness Patricia Kaneda, a medical secretary at St. Francis Hospital. She testified in pertinent part as follows:

Q [By the state] Were you asked to appear in Court today concerning Dr. John Wally?

A Yes, sir.

Q Do you know his whereabouts at this time?

A Yes, sir.

Q What is his address right now?

A Well, according to our records, Dr. Wally's forwarding address is the Western Blueprint Company at 909 Grant Avenue in Kansas City, Missouri.

MISS LEE [Prosecuting Attorney]: Fine. I have no other questions, your Honor.

There was no cross examination by appellant's lawyer.

Shortly after conclusion of this testimony, appellant's attorney stated that he would object to the introduction of any testimony by Dr. Wally recorded from the prior pre-trial hearing. His statement of the second of his two objections to this evidence was phrased as follows:

MR. TSUKIYAMA [Appellant's attorney]: And the second ground of the objection would be that to introduce the transcript of the testimony taken in that prior hearing would deprive the Defendant of confrontation.

Following this formal statement of objection, some discussion was had, but the objection was, in fact, overruled, and the testimony of Dr. Wally was introduced by the state by reading to the jury certain relevant portions from the pre-trial hearing

The substance of the testimony read to the jury was that, in Dr. Wally's opinion, appellant Kim was in an intoxicated state when she was brought to St. Francis Hospital after the automobile accident. Dr. Wally had stated, and the jury was read, his opinion that appellant had the possibility of blurred vision that might have prevented appellant from reading, that appellant had slurred speech, and that there was an over-powering smell of alcohol in the emergency room of St. Francis Hospital, where only appellant, Dr. Wally, and a nurse were present. There can be no doubt that the state introduced this testimony as tending to prove that appellant was drunk at the hospital, and thus, inferentially, was also intoxicated while driving her car immediately prior to the collision which resulted in the deaths of the Newmans and in the injuries that required her to be transported to the hospital.

Evidence that permits, or even compels, the inference that a motor vehicle was operated by appellant while appellant was very intoxicated is material, and, judging from the trial transcript *in toto*, even essential, in carrying the state's burden of proof to show that appellant had operated her vehicle in a grossly negligent manner, one of the essential elements of the crime of negligent homicide.[3] The court so instructed the jury, for in addition to the more usual instructions as to negligence, the court also instructed:

> If you find from the evidence that the Defendant was under the influence of alcohol, you may properly consider such fact in reaching your verdict as to whether the Defendant was negligent.

Under the confrontation clauses of the United States and Hawaii Constitutions, a defendant in a criminal prosecution has the right "to be confronted with the witnesses against him."[4] In *Barber v. Page*, 390 U.S. 719 (1968) and in *Berger v.*

---

[3] The essential nature of Dr. Wally s testimony is revealed not only by a reading of the transcript, but also by the fact that the jury made two requests of the court after having received their instructions: first, they asked for more instructions and guidance on the gross negligence issue, and, subsequently, they asked for a rereading of Dr. Wally's testimony.

[4] Sixth Amendment, United States Constitution; Art. I, Sec. 11, Hawaii State Constitution.

*California,* 393 U.S. 314 (1969), the United States Supreme Court reversed criminal convictions on the ground that the state made an insufficient effort to obtain the presence at trial of the potential witness whose pre-trial testimony was then read to the trial jury. The traditional rule — that the showing of the mere absence of the witness from the jurisdiction satisfied the constitutional requirement that the witness is "unavailable" — was emphatically rejected in *Barber v. Page, supra.* Although there is no new and comprehensive definition of what constitutes "unavailability", the Supreme Court in *Barber,* noted the relevance of some of the changes in the law that rendered the old definition of "unavailability" inadequate. The court stated, 390 U.S. 719, 723-24, fn. 4 that the general enactment, in almost all states, of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings establishes a modern spirit of cooperation between the states that vitiates the old theory that the mere absence of a witness from the jurisdiction where trial occurs constitutes sufficient "unavailability."

We hold that the state did not sufficiently establish the "unavailability" of Dr. Wally to permit it to use his pre-trial testimony. Establishing that a witness has a forwarding address in another state at best only tends to prove the witness's absence from Hawaii. The state must show a good faith effort to ascertain the actual location of the witness, and thereafter, if necessary, to attempt to compel the witness's attendance at trial through use of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, SLH 1971, Act 116, formerly HRS, ch. 719; renumbered as HRS, ch. 736, by SLH 1972, act 9, § 1, sec. 1300(2)(b)(xi), see volume 7, HRS, 1973 Supp., p. 290.

Unless the state can show a good faith attempt to use this statute to assure attendance of the witness, the state may not introduce the pre-trial testimony of the absent witness. *Barber v. Page, supra; Berger v. California, supra.* Where the suspected whereabouts of the witness are within one of the few states that may not have enacted the Uniform Act, a lesser showing of "unavailability" than that imposed here may suffice. Also, a lesser showing of "unavailability" seems

constitutionally sufficient when the witness is residing within a foreign country.[5] *Mancusi v. Stubbs,* 408 U.S. 204 (1972). Only in such cases would it seem that the Uniform Act would not mandate a strong, good faith effort to secure attendance of the witness. *Id.,* at 212. In the case at bar, Dr. Wally was believed to be in Missouri. Missouri has enacted the Uniform Act. V.A.M.S. § 491.400-.450.

Since the state failed to show a good faith effort to compel Dr. Wally's attendance at the appellant's trial (and this was admitted during the oral argument), an inadequate foundation was laid for the admission therein of his pre-trial testimony. The trial court erred in admitting this testimony in violation of the appellant's constitutional right to confrontation. For this error, we are required to reverse the conviction and remand this case for a new trial. We stress that this is not a reversal of a conviction on the basis of a mere technicality. The accused's right to confront the witnesses against him in a criminal trial is an essential and basic constitutional right. The slow development of this fundamental right, central to our system of justice, has been carefully, and repeatedly, traced — and stressed — by the United States Supreme Court.[6] This court has been no less ardent in its efforts to insure that the full extent of the right to confrontation is assured to all those accused by the state of criminal acts. *State v. Adrian,* 51 Haw. 125, 453 P.2d 221 (1969); *State v. Casey,* 51 Haw. 99, 451 P.2d 806 (1969).[7]

---

[5] There is, however, even some question as to the present day validity of this statement of the law as it may apply to United States' nationals residing abroad, in light of 28 U.S.C. § 1783. *See also, Mancusi v. Stubbs, supra,* at 211-12; *id.,* at 222 (Marshall, J., dissenting).

[6] *Pointer v. Texas,* 380 U.S. 400, 404-06 (1965); *California v. Green,* 399 U.S. 149, 156-58 (1970).

[7] We also note the recent case, *State v. Faafiti,* 54 Haw. 637, 642, 513 P.2d 697, 701 (1973), in which we were faced with the issue of unavailability. In *Faafiti* we held that the state's effort to procure the attendance of a key witness, Ira Haskins, was sufficient where the witness was serving in the military and the appropriate military authorities were requested, without avail, to return the witness to this jurisdiction for defendant's trial. The record in the case at bar reflects no effort even arguably comparable to that made in *Faafiti.*

In light of the essential nature of this constitutional right of confrontation, we cannot agree with the state's argument that the objection stated by appellant's attorney, and quoted, *supra*, was insufficient to preserve for appeal the subordinate issue of "unavailability" within the larger confrontation question. We have repeatedly held that important constitutional questions can be raised for the first time on appeal. *State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973); *State v. Bunn*, 50 Haw. 351, 440 P.2d 528 (1968). *See also*, Rule 52(b), H.R.Cr.P. Alternatively, we also note that the objection made by appellant's attorney to the reading of Dr. Wally's testimony was more than sufficient under the legal standards on the adequacy of such objections established by *Barber v. Page, supra*, and *Douglas v. Alabama*, 380 U.S. 415, 420-23 (1965).

## II.

Appellant Kim urges, as a second specification of error, that the trial court erred in failing to grant her motion for judgment of acquittal posed at the close of the state's case. Rule 29(a), H.R.Cr.P. Appellant urges that there was inadequate evidence to establish that appellant was the operator of the motor vehicle which collided with the automobile containing the Newmans.

Appellant's contention is without merit. Under the standards set forth in *State v. Rocker*, 52 Haw. 336, 346, 475 P.2d 684, 690 (1970), and recently reaffirmed in *State v. Santiago*, 55 Haw. 162, 163-64, 516 P.2d 1256, 1257 (1973), and *State v. Kahalewai*, 55 Haw. 127, 128, 516 P.2d 336, 337 (1973), we find no error in the denial of the Rule 29(a) motion. Indeed, contrary to all the arguments adduced by appellant, under our law the evidence offered at trial during the prosecution's case to identify appellant as operator of the lethal vehicle was not only sufficient to go to the jury to permit them to "weigh the evidence, and draw justifiable inferences of fact," *Rocker, supra*, at 346, but actually remains in the transcript virtually uncontradicted by appellant. Of course, the state carries the burden of proof beyond a reasonable doubt, but we

hold that the state carried the burden by adducing sufficient circumstantial evidence to permit the jury to draw the "justifiable inferences of fact" that, beyond a reasonable doubt, appellant was the operator of the lethal vehicle.

Judgment reversed and remanded for a new trial.

*Donald K. Tsukiyama*, Public Defender, for defendant-appellant.

*Corrine H. Lee*, Deputy Prosecuting Attorney (*Barry Chung*, Prosecuting Attorney, City & County of Honolulu, of counsel), for plaintiff-appellee.