[Civ. No. 3287. Fifth Dist. Nov. 28, 1977.]

In re JESUS B., a Person Coming Under the Juvenile Court Law.
DALE J. GRAVER, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
JESUS B., Defendant and Appellant.

COUNSEL

Lavy & Lacy and Edward M. Lacy, Jr., for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, and Joel E. Carey, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**BROWN (G. A.), P. J.**—The juvenile court found that appellant came within Welfare and Institutions Code section 602 by reason of having violated Penal Code section 245, subdivision (a) (assault with a deadly weapon), and Penal Code sections 664/211 (attempted robbery).

The single issue on appeal is whether appellant was deprived of a fair hearing by reason of the failure of the prosecution to produce the witness Cristobal Rangel at the rehearing before the juvenile judge. The trial court denied a motion to dismiss predicated on that ground.

During the late evening on September 26, 1976, Ismael Juarez and Cristobal Rangel were accosted by appellant. Appellant ordered the two victims at gunpoint to turn over their cash. They did so. Appellant ordered the victims to walk away from the area. As the two walked away, appellant fired a .22 caliber rifle twice, and one bullet struck Ismael Juarez in the middle of the lower back. Appellant was identified by both Juarez and Rangel.

On September 27, 1976, Cristobal Rangel, who was the victim of the robbery and an eyewitness to the attempted robbery and shooting of Ismael Juarez, was taken into custody on the federal charge of being an illegal alien and held in the Stanislaus County jail. Police officers testified that since the charge against Rangel was a federal one, the local authorities were only authorized to retain Rangel in custody for five days; if federal authorities did not take custody of him within that period, he had to be released. The jail's records indicated that Rangel was a material witness and should be held.

On October 1, 1976, Detective Watson of the Modesto Police Department learned that Rangel was about to be released from the

county jail. Knowing that Rangel was a victim and eyewitness to the robbery and shooting incident, Detective Watson called the district attorney's office to determine if he could prevent Rangel's release by putting a hold on him and thus insure his presence to testify. He was advised that he couldn't get a hold and to contact the Border Patrol, which he did. The Border Patrol advised the detective that neither the county nor local police could further detain Rangel; however, they indicated they could issue a 15-day renewable pass authorizing Rangel to be at large within the county. At the end of that time Rangel was to turn himself in for deportation.

Detective Watson obtained the pass for Rangel from the Border Patrol and conversed with Rangel prior to his release. Through an interpreter, the detective obtained Rangel's local address. Rangel was also advised that he must remain available to testify, that he should notify the police if he moved out of the area, and that he should be available for any contact from the police. Further, Rangel was told that he should report back to the jail at the expiration of the 15-day pass in order to have the pass renewed if the hearing had not occurred by that time. Rangel agreed to all of the above and led Detective Watson to believe that he would testify. Rangel was released on October 1, 1976, on a pass issued to Detective Watson by the Border Patrol. No subpoena was issued to Rangel nor was appellant or counsel informed of his pending release.

Rangel has not been heard from or seen since his release on the Border Patrol pass on October 1, 1976. Detective Watson attempted to serve a subpoena on Rangel at the address he had been given but was unable to locate him.

Appellant was also charged with assault with a deadly weapon and robbery of Rangel. When Rangel did not appear and his presence could not be procured at the jurisdictional hearing on October 19, 1976, before the referee, the charges stemming from the assault and robbery of Rangel were dismissed for insufficient evidence.

Appellant did not seek to procure Rangel's presence at the jurisdictional hearing before the referee on October 19 nor did he object to his absence. However, when the cause was set for rehearing before the juvenile judge on December 9, 1976, appellant, on November 30, 1976, procured an order from the court ordering the prosecution to produce Rangel at that hearing.

In *Bellizzi* v. *Superior Court* (1974) 12 Cal.3d 33, 37 [115 Cal.Rptr. 52, 524 P.2d 148] (cert. den., 420 U.S. 1003 [43 L.Ed.2d 761, 95 S.Ct. 1445]), drug charges against a defendant were dismissed and then refiled two days later. In the interim a defense witness who was not an informant and not under the control of the prosecution left the state and could not be located. The Supreme Court in denying prohibition to restrain further proceedings stated: "We have concluded that the unavailability of petitioner's witness was not attributable to any impropriety on the People's part . . . ." (12 Cal.3d at p. 35.)

■ In arriving at this conclusion the court summarized the legal principles applicable:

"Generally, an accused is not entitled to a dismissal simply because he is unable to produce witnesses assertedly necessary to his defense. [Citation.] The rule is otherwise, however, where it is shown that the prosecution has wrongfully deprived an accused of the opportunity to secure the presence of a material witness. This was made clear in *People* v. *Kiihoa,* 53 Cal.2d 748 [3 Cal.Rptr. 1, 349 P.2d 673], in which we held that it was a denial of due process for the People to defer prosecution of the defendant until a police informant who was a material witness had left the jurisdiction.

"Petitioner contends that under the rationale of *People* v. *Kiihoa, supra,* 53 Cal.2d 748, the filing of a new complaint in the instant case constituted a similar denial of due process. We disagree. The fundamental due process principle underlying *Kiihoa* is that the prosecution may not deprive an accused of the *opportunity* to present material evidence which might prove his innocence. Even if the prosecution's motives are 'praiseworthy,' they cannot prevail when they *'inevitably* result, intentionally or unintentionally, in depriving the defendant of a fair trial.' (Italics added; *id.* at p. 754.) Significantly *Kiihoa* involved the unavailability of a police informant. As such, the witness was in contact with, and under the control of, the prosecution. Realistically only the prosecution could have assured the witness' presence at trial and thus fairness required that the People, rather than the defendant, bear the responsibility for maintaining that witness' availability. [Citation.]" (12 Cal.3d at pp. 36-37; fns. omitted.) In a footnote (fn. 2, p. 37) the court explained: "The common sense rationale of *Kiihoa* and *Harris* [*Harris* v. *Superior Court,* 35 Cal.App.3d 24 (110 Cal.Rptr. 400)], that the People must bear

the responsibility of producing their own agents and informants, is inapplicable where, as in the instant case, the defendant has ample opportunity to assure his witness' presence at trial."

In *People* v. *Flores* (1976) 62 Cal.App.3d Supp. 19 [133 Cal.Rptr. 759] the appellant was prosecuted for soliciting two persons to pay money for transportation without possessing a license. The officers failed to obtain the names and addresses of the two witnesses solicited and they did not appear for trial. The trial court denied defendant's motion to dismiss, which was based on the failure of the witnesses to appear, and the appellate department affirmed, pointing out that the missing witnesses were not informants under police control but were passing strangers accosted by the defendant. Quoting from *People* v. *Beagle* (1972) 6 Cal.3d 441, 450 [99 Cal.Rptr. 313, 492 P.2d 1], the court stated: " 'Contrary to defendant's contentions *Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851-854 [83 Cal.Rptr. 586, 464 P.2d 42], does not establish a standard of judicial review of official pretrial investigations nor does it impose a general duty on prosecutorial officials to serve as defense investigators.' " (62 Cal.App.3d Supp. at p. 23.)

Appellant places primary reliance upon *People* v. *Mejia* (1976) 57 Cal.App.3d 574 [129 Cal.Rptr. 192]. In that case the court affirmed a dismissal entered upon defendant's motion when the People could not comply with the court's order to produce two witnesses for trial.

The two witnesses were illegal aliens who were among seven persons who were present in a residence where the seven persons, including the defendant, were arrested for possessing marijuana. The two illegal aliens were not charged and were immediately turned over to the United States Immigration Service for deportation to Mexico. By not charging them they became immediately available for deportation. The prosecution did not make any effort whatsoever to detain them pending trial, did not subpoena them, and did not notify the defendant of their release but, on the contrary, took affirmative action to make sure that they were returned to Mexico. Relying upon federal cases which have held that dismissal of federal charges is required when material witnesses have been unavailable by reason of deportation by the federal government (*United States* v. *Mendez-Rodriguez* (9th Cir. 1971) 450 F.2d 1, 4-5; *United States* v. *Tsutagawa* (9th Cir. 1974) 500 F.2d 420, 423), the court in *Mejia* held that state action was responsible for the deportation when the state did not charge the two witnesses or exert any effort to detain them

but turned them over to federal immigration authorities "knowing they would be deported."

The court acknowledged that the situation would be different if the federal government without knowledge or aid of the state authorities unilaterally deported the witnesses.

■ *Mejia* is clearly distinguishable from the case at bench. (1) Rangel was a victim of crimes committed by appellant for which appellant was charged and which were dismissed at the jurisdictional hearing for lack of evidence because Rangel did not appear. Clearly the prosecution wanted his presence. (2) The police took no affirmative action to assure his absence. They did not, as in *Mejia,* turn him over to the immigration authorities knowing he would be deported. (3) the police took reasonable and active steps to assure his presence for the hearing. After determining that he would be released in five days, they did everything known to them to keep him in custody within the apparent limits of their authority. Detective Watson contacted the district attorney's office to see if there was any way that custody of Rangel could be retained by state authority. Watson was informed that there were no state procedures available for such detentions. Watson then contacted the Border Patrol and asked if they could detain Rangel. The Border Patrol indicated that the only thing they would advise would be to give Rangel a 15-day pass so as to allow him to remain within the county. Watson then arranged with the Border Patrol to issue Rangel a renewable pass. Before releasing Rangel, Detective Watson spoke with him through an interpreter. Watson obtained Rangel's local address and received assurances from Rangel that he would remain in contact with the police department and be available for subsequent hearings.

The appellant argues, however, that the prosecution should have done more—more particularly, that the People should have subpoenaed Rangel and notified appellant of Rangel's release. However, the People are not required to do everything possible to assure the witness' presence in order to fulfill their obligation. All that is required is to take those steps as appear reasonably calculated under the circumstances to assure his presence. The totality of the efforts to assure the presence of a material witness must be considered, including the character of the official acts taken, the degree of control exercisable over the witness, and such matters as whether the prosecutor reasonably believed prior to trial that the witness would appear willingly and therefore did not subpoena him.

In the latter regard we note that the police in fact got assurance from Rangel that he would appear. It is unlikely that the additional force of a subpoena would have dissuaded this alien from disappearing—either to avoid deportation or to voluntarily return to Mexico.

Of course, the prosecution could have notified the appellant of Rangel's release, and in the light of hindsight it would have been better if they had done so. However, the police action must be judged in the light of what was reasonable under the circumstances then appearing, which included knowledge by the police that Rangel was a victim and not an accused. The police could reasonably have believed that it would be unlikely that he would have given favorable testimony on behalf of the appellant or that the appellant would want him as a witness. This is corroborated by appellant's obvious lack of interest in having Rangel as a witness at the first jurisdictional hearing before the referee and waiting until the eve of the rehearing some two months later before procuring the order for Rangel's appearance.

■ Appellant mentions without extensive argument that action should have been taken to incarcerate Rangel as a material witness pending the trial pursuant to the provisions of Penal Code sections 879, 881 and 882.[1] Neither the appellant nor the Attorney General has briefed the point. We note in passing, however, that in light of the provisions of article I, section 10, of the California Constitution, which provides in pertinent part that "[w]itnesses may not be unreasonably detained," there is grave doubt an alien witness could constitutionally be held 18 days (the time between the release of Rangel and the

[1]Penal Code section 879 provides: "When the magistrate or a Judge of the Court in which the action is pending is satisfied, by proof on oath, that there is reason to believe that any such witness will not appear and testify unless security is required, he may order the witness to enter into a written undertaking, with sureties, in such sum as he may deem proper, for his appearance as specified in the preceding section."

Penal Code section 881 provides: "If a witness, required to enter into an undertaking to appear and testify, either with or without sureties, refuses compliance with the order for that purpose, the magistrate must commit him to prison until he complies or is legally discharged."

Penal Code section 882 provides: "When, however, it satisfactorily appears by examination, on oath of the witness, or any other person, that the witness is unable to procure sureties, he may be forthwith conditionally examined on behalf of the people. Such examination must be by question and answer, in the presence of the defendant, or after notice to him, if on bail, and conducted in the same manner as the examination before a committing magistrate is required by this code to be conducted; and the witness thereupon discharged; and such deposition may be used upon the trial of the defendant, except in cases of homicide, under the same conditions as mentioned in section thirteen hundred and forty-five; but this section does not apply to an accomplice in the commission of the offense charged."

jurisdictional hearing) and certainly not as long as two months under these sections. In any event, because of the draconian nature of this procedure, we hold the police or prosecution do not have to invoke it in order to avoid the dismissal of an action for failure to make a witness available at trial.

Under all of the circumstances we conclude that Rangel's unavailability "cannot be said to be the 'inevitable' result of the People's action or omission . . ." (*Bellizzi* v. *Superior Court, supra,* 12 Cal.3d at p. 37) or "impropriety on the People's part" (*id.,* at p. 35).

The judgment is affirmed.

Franson, J., and Hopper, J., concurred.