**John Adrian DRES,
Petitioner-Appellant,**

**v.**

**Joseph CAMPOY, Warden, and Attorney General of the State of California, Respondents-Appellees.**

**No. 84–6580.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1985.

Decided March 13, 1986.

---

Paul E. Potter, Pasadena, Cal., for petitioner-appellant.

Donald F. Roeschke, David F. Glassman, Deputy Attys. Gen., Los Angeles, Cal., for respondents-appellees.

Before HUG and HALL, Circuit Judges, and JAMESON,* District Judge.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Petitioner, John Adrian Dres, appeals from the district court's denial of his writ of habeas corpus. The petitioner was convicted of first-degree murder in California. The California Court of Appeals affirmed and the California Supreme Court denied a hearing. Petitioner's initial writ of habeas corpus was dismissed because it included unexhausted state claims. Petitioner appealed unsuccessfully again to the California Supreme Court and then filed the instant writ of habeas corpus. The district court adopted the recommendation in the magistrate's report and dismissed the second petition. We affirm.

I

On July 26, 1975 a night watchman discovered the body of Smiley Hughes on Berth 118 Road in Long Beach, California. An autopsy revealed that his nose and jaw had been fractured and that he had been stabbed four times. Police arrested petitioner in connection with the murder a few weeks later.

---

* Hon. William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

Petitioner's girlfriend, Gayle Ostberg, a minor, disappeared after being subpoenaed to testify at petitioner's preliminary hearing. Sheriff's deputies arrested her in Encinitas, California, and returned her to Long Beach to testify. Ostberg testified at the preliminary hearing that petitioner admitted killing Hughes because Hughes had threatened petitioner's mother with a knife. Her testimony included a detailed account of how petitioner killed Hughes. Ostberg further testified that on the night of the murder she saw the petitioner at his mother's house and that he was drunk, had blood on his shirt, and cuts on his knuckles.

Prior to petitioner's trial for murder, Ostberg moved to Arizona to live with her mother. The prosecutor contacted Ostberg's mother concerning the need for her daughter's testimony at trial. Her mother agreed to bring Ostberg to California to testify, though she was "not happy" about accompanying her daughter to California. Ostberg's mother also sent the prosecution a letter supposedly written by Ostberg which exonerated petitioner by claiming that Ostberg had murdered Hughes.

Approximately three weeks before trial, Ostberg ran away from her mother's home. The prosecution's efforts to locate Ostberg proved unsuccessful. Ostberg's friends said she moved somewhere in California, but none of them could offer more specific information. At trial, the court allowed the prosecution to introduce Ostberg's pretrial testimony over a hearsay objection because Ostberg was unavailable as a witness. Petitioner now claims that this ruling violated his sixth amendment right to confront witnesses against him.

## II

■ State court findings of fact are presumed correct in habeas corpus proceedings. *Sumner v. Mata,* 449 U.S. 539, 546–49, 101 S.Ct. 764, 768–70, 66 L.Ed.2d 722 (1981); 28 U.S.C. § 2254(d). We review evidentiary rulings for an abuse of discretion. *United States v. McClintock,* 748 F.2d 1278, 1291 (9th Cir.1984), *cert. denied,* —— U.S. ——, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985); *United States v. Turk,* 722 F.2d 1439, 1441 (9th Cir.1983), *cert. denied,* —— U.S. ——, 105 S.Ct. 86, 83 L.Ed.2d 33 (1984). A state trial court's decision that a witness is "unavailable" is an evidentiary ruling usually reviewed for an abuse of discretion. *People v. Blackwood,* 138 Cal.App.3d 939, 945, 188 Cal.Rptr. 359, 363 (1983) (citing *People v. Williams,* 9 Cal.3d 24, 35, 106 Cal.Rptr. 622, 506 P.2d 998 (1973)). However, we review *de novo* the question of whether the Supreme Court's standards for unavailability have been satisfied in this case. *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III

■ In *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), the Supreme Court established that a defendant's sixth amendment right to confront witnesses applies to the states through the fourteenth amendment.[1] The right to confront witnesses serves three purposes: (1) to insure reliability by means of oath, (2) to expose the witnesses to cross-examination, and (3) to permit the trier of fact to weigh the demeanor of the witness. *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970).

■ A defendant's confrontation right, however, is not absolute. "[T]here has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Barber v. Page,* 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed.2d 255 (1968). The California Evidence Code follows this rule. Section 1291 provides: "(a) Evidence of former tes-

---

**1.** The California Constitution also guarantees a right to confront witnesses: "The defendant in a criminal cause has the right ... to be confronted with the witnesses against the defendant."

Cal. Const., art. I, § 15. *See also* Cal.Penal Code § 686(3) (defendant is entitled to be confronted with the witnesses against him in the presence of the court).

timony is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and ... (2) [t]he party against whom the testimony is offered ... had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which he has at the hearing."

Drawing upon *Barber v. Page*, the Supreme Court created in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), a two-prong test for the admissibility of testimony from a preliminary hearing. First, the sixth amendment right of confrontation establishes a rule of necessity. *Roberts*, 448 U.S. at 65, 100 S.Ct. at 2538. The prosecution must prove the unavailability of a witness before prior testimony can be introduced. *Id.* Second, assuming a witness is unavailable, the prior testimony must meet certain "indicia of reliability." *Id.* at 65–66, 100 S.Ct. at 2539.

### A

The crux of this case is whether Ostberg was unavailable as a witness for petitioner's trial. "[A] witness is not 'unavailable' for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber*, 390 U.S. at 724–25, 88 S.Ct. at 1322. The lower courts in this case concluded that the prosecution made a good faith effort to procure Ostberg's testimony.[2] Petitioner argues, however, that the lower courts erred in finding good faith because the prosecutor failed to use the Uniform Act to Secure Attendance of Witnesses from Without the State, Cal.Penal Code § 1334 (Uniform Act). The Uniform Act allows courts to compel the attendance of witnesses living in other states which have enacted similar statutes.

Petitioner bases his argument on two grounds. First, California Evidence Code § 240(a)(5) provides that a witness is unavailable if he or she is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process." A California court's "process" includes the powers under the Uniform Act. *People v. Masters*, 134 Cal.App.3d 509, 522–23, 185 Cal.Rptr. 134 (1982). Second, Petitioner argues that dictum in *Barber v. Page*, 390 U.S. at 723 n. 4, 88 S.Ct. at 1321 n. 4, suggests that a finding of good faith is precluded when the prosecutor fails to use the Uniform Act. His interpretation appears to be supported by our interpretation of *Barber:* "The Court indicated that if the prosecution fails to make use of the Uniform Act ... it has not made the required 'good faith effort' and cannot use the prior testimony." *Daboul v. Craven*, 429 F.2d 164, 167 (9th Cir.1970).

■ The good faith obligation to resort to the Uniform Act, however, arises only when the prosecutor knows the location of the witness. *Roberts*, 448 U.S. at 75–77, 100 S.Ct. at 2543–44; *Masters*, 134 Cal. App.3d at 523–24, 185 Cal.Rptr. 134. See also *Poe v. Turner*, 490 F.2d 329, 331–32 (10th Cir.1974) (resort to Uniform Act not required when whereabouts of witness unknown). *Cf. People v. Davis*, 29 Cal.3d 814, 176 Cal.Rptr. 521, 527, 633 P.2d 186, 192 (1981). If the witness cannot be located, application of the Uniform Act is impossible. In cases in which the witness disappears, the prosecution only has a good faith obligation to find the witness. *Masters*, 134 Cal.App. 523–26, 185 Cal.Rptr. 134. *See also State v. Kim*, 55 Hawaii 346, 350,

---

**2.** The district court found that the prosecutor attempted to locate Ostberg prior to trial by:

—calling telephone numbers supplied by Ostberg's mother from which Ostberg had previously called her

—contacting the Glendale, Arizona police to verify that the witness was not living with her mother and not in custody

—visiting areas in Southern California frequented by Ostberg and showing her picture

—verifying that Ostberg was not in a juvenile facility or a hospital in California

—checking with California DMV for any tickets issued against Ostberg

—visiting the apartment which Ostberg previously occupied while residing in California.

These actions led the California trial and appellate courts, along with a federal magistrate and district court, to conclude that the prosecutor made a good faith effort to locate Ostberg.

519 P.2d 1241, 1244 (Hawaii 1974) (prosecutor must make good faith effort to locate witness).

Petitioner further contends that the prosecutor did not make a good faith effort to secure Ostberg's attendance because her home address and telephone number in Arizona were known for months in advance of trial. During this period, the prosecution failed to comply with the available procedures under the Uniform Act for procuring Ostberg's attendance. Because Ostberg fled only a few weeks before trial, petitioner argues the prosecution failed to use the Uniform Act in the hopes that Ostberg would be unavailable at trial. The prosecution could in this way avoid a cross-examination of Ostberg concerning the letter she wrote exonerating the petitioner.

Initial paperwork under the Uniform Act had in fact been prepared by the prosecutor's office. A tactical decision was made not to serve Ostberg with a subpoena because the prosecutor feared she might flee as she had done prior to the preliminary hearing. The prosecutor faced a dilemma under the Uniform Act because if he served Ostberg with a subpoena she might flee, yet if he failed to seek a subpoena the trial court might find that he had not made a good faith effort to obtain her testimony. The only other option available under the Uniform Act was for the prosecutor to request that Ostberg be taken into custody. Cal.Penal Code § 1334.3. However, article I, section 10 of the California Constitution provides in part that "[w]itnesses may not be unreasonably detained." In *Graver v. Jesus B.,* a California appellate court expressed "grave doubt" as to whether it would be permissible to hold a material witness for 18 days. 75 Cal.App.3d 444, 451–52, 142 Cal.Rptr. 197 (1977). The court concluded that to detain a material witness for two months certainly would be unconstitutional. *Id.; see also* Cal.Penal Code § 881(d) (material witness may be taken

into custody for no more than 10 days for purposes of testifying at preliminary hearing).

 In this case, the prosecutor could not have taken Ostberg into custody prior to the time she fled because she disappeared three weeks before trial. Taking her into custody a month or more before trial would have been a violation of her constitutional rights. Cal. Const., art. I, § 10. If the prosecutor had not contacted Ostberg but instead planned to serve her and take her into custody a few days before trial to reduce the chance she might flee, it might have appeared that he had made no effort to procure Ostberg's attendance if she did flee, as she in fact did, prior to the time she legally could be taken into custody. Thus, the prosecutor's only viable option under the Uniform Act was to subpoena Ostberg, which probably would have caused her to flee judging from her behavior before the preliminary hearing. In light of these tactical considerations, the prosecutor acted in good faith when he decided to use means other than the Uniform Act for procuring Ostberg's attendance at trial.

The prosecutor chose to rely on an informal promise from Ostberg's mother that her daughter would appear for trial. Whether this promise constitutes a good faith effort to secure Ostberg's attendance at trial and thereby satisfies the necessity prong of the *Roberts* case is a question of first impression.[3] In *People v. Masters,* the court avoided the question of whether a promise to appear under certain circumstances can constitute good faith. The prosecutor in *Masters* failed to use the Uniform Act to secure the attendance of a material witness at trial. *Masters,* 185 Cal. Rptr. at 139. Instead, the prosecutor informally negotiated an agreement with the witness to appear at trial. The witness eventually left the state and could not be

---

**3.** To the extent that the petitioner's brief discusses this issue, the cases cited are simply inapposite. *See, e.g., In re Terry,* 4 Cal.3d 911, 95 Cal.Rptr. 31, 484 P.2d 1375 (1971) (location of witness known); *In re Montgomery,* 2 Cal.3d

863, 865, 87 Cal.Rptr. 695, 471 P.2d 15 (1970) (location of witness known); *People v. Harris,* 266 Cal.App.2d 426, 72 Cal.Rptr. 423, 425 (Ct. App.1968) (no efforts by prosecution to secure witness' attendance until the eve of trial).

found at the time of the trial. She telephoned shortly before trial to say she could not appear because of a new job and poor health, but refused to disclose her location. The court held that she was not unavailable as a witness and therefore her preliminary hearing testimony could not be introduced at trial.

The court in *Masters* reasoned that the mere promise by the witness to appear did not amount to a good faith effort because the witness had proved unreliable. *Masters*, 185 Cal.Rptr. at 143. She had failed to notify the prosecution when she moved out of state, contrary to their agreement, and she had refused to return the prosecutor's calls. *Id.* Faced with an uncooperative out of state witness, the prosecutor was obligated to use the Uniform Act to meet the good faith requirement. *Id.*, 185 Cal.Rptr. at 143–44. The fact that the prosecutor did not know the whereabouts of the witness at trial did not relieve him of his responsibility to use the Uniform Act because the witness' location was known at the time she breached their agreement shortly before trial.

This case, however, is distinguishable from *Masters* in two respects. First, the prosecutor had no reason to suspect that a promise from Ostberg's mother would be an ineffective means for securing her daughter's testimony. The prosecution should not have to comply with the procedures of the Uniform Act when it appears that an out-of-state witness is cooperative or more likely to testify on the basis of an informal agreement than under the compulsion of a subpoena. Second, the prosecutor in *Masters* failed to exercise good faith in locating the witness when she informed

him by telephone that she would not attend. Many leads as to her whereabouts were available, but none were pursued. Every reasonable effort was made to find Ostberg after she disappeared. The lower courts correctly concluded that the prosecutor made a good faith effort to obtain Ostberg's testimony and that Ostberg was therefore unavailable as a witness.[4]

**B**

The second prong of the *Roberts* test requires that the prior testimony sought to be introduced must bear certain "indicia of reliability." 448 U.S. at 65–66, 100 S.Ct. at 2539. In *California v. Green,* 399 U.S. 149, 165–66, 90 S.Ct. 1930, 1938–39, 26 L.Ed.2d 489 (1970), the Supreme Court found sufficient guarantees of trustworthiness in the "accouterments" of the preliminary hearing. "Since there was an adequate opportunity to cross-examine [the witness], and counsel ... availed himself of that opportunity, the transcript ... bore sufficient 'indicia of reliability' and afforded ' "the trier of fact a satisfactory basis for evaluating the truth of the prior statement." ' " *Mancusi v. Stubbs,* 408 U.S. 204, 216, 92 S.Ct. 2308, 2315, 33 L.Ed.2d 293 (1972).

Ostberg's testimony at the preliminary hearing was made under oath, counsel was present, and she was subject to cross-examination. Her testimony thus bore the necessary indicia of reliability required under *Green* and *Mancusi.* We therefore affirm the district court's finding that Ostberg was unavailable as a witness and that the state court properly admitted her testimony from the preliminary hearing.

AFFIRMED.

---

**4.** Our decision today is consistent with the Hawaii Supreme Court's application of the Uniform Act:

> The state must show a good faith effort to ascertain the actual location of the witness, and thereafter, *if necessary,* to attempt to compel the witness's attendance at trial through use of the Uniform Act....

*State v. Kim,* 55 Hawaii 346, 350, 519 P.2d 1241, 1244 (Hawaii 1974) (emphasis added). The court makes clear that the good faith obligation first applies to finding the witness. The court

also recognizes that the Uniform Act should be used "if necessary" to secure the attendance of the witness. In this case, the prosecutor made a good faith effort to find Ostberg. *See supra* note 2. The prosecutor also determined that issuing a subpoena under the Uniform Act would decrease the likelihood of Ostberg testifying. Because Ostberg had fled once before after being subpoenaed, we find that the prosecutor made a good faith effort to make alternative arrangements for securing Ostberg's testimony.

HUG, Circuit Judge, dissenting:

I respectfully dissent.

Without a doubt, Gayle Ostberg's preliminary hearing testimony was the most damaging evidence admitted at petitioner's trial. As the majority summarized, Ostberg testified that petitioner admitted killing Hughes because Hughes had threatened petitioner's mother with a knife. Her testimony also included a detailed account of how petitioner killed Hughes—that on the night in question Ostberg saw the petitioner at his mother's home in a drunken state, wearing a blood stained shirt, with knuckles that were badly bruised and cut. The devastating nature of her testimony was obvious; she was a key part of the state's case. Before trial, Ostberg's mother sent the prosecution a letter that Ostberg had written sometime earlier. In the letter, Ostberg exonerated petitioner and implicated herself in the Hughes murder.

In order to admit Gayle Ostberg's preliminary hearing testimony, the prosecution must satisfy a two-prong test established by the Supreme Court in *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980). The first prong establishes a rule of necessity; the prosecution must demonstrate that Gayle Ostberg is unavailable before her prior testimony can be used. *Id.* Second, assuming Gayle Ostberg is unavailable, her prior testimony must meet certain "indicia of reliability." *Id.* at 65–66, 100 S.Ct. at 2539. The majority felt that the "crux of this case" concerned Ostberg's unavailability as a witness. The second prong, reliability, hardly detained the majority. The majority simply concluded that her testimony was reliable and did not address the effect of the letter Ostberg wrote in which she exonerated petitioner and implicated herself. Because this case hinges on an appraisal of both prongs of the *Roberts* test, I will set forth separately my differences with the majority on each issue.

### A. *Unavailability*

In *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court stated that "a witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Id.* at 724–25, 88 S.Ct. at 1322. In footnote 4 of the *Barber* opinion, the Court implied that a finding of good faith is precluded when the prosecutor fails to use the Uniform Act. *Id.* at 723, 88 S.Ct. at 1321; *Daboul v. Craven,* 429 F.2d 164, 167 (9th Cir.1970).

In this case, the prosecutor's office prepared the necessary paperwork under the Uniform Act. However, the prosecutor decided not to serve Ostberg with the subpoena. The prosecutor was already aware of Ostberg's unreliability since she had disappeared a short time before the preliminary hearing. In lieu of a subpoena, the prosecutor relied instead on an informal promise from Ostberg's mother that her daughter would appear at trial. The prosecutor contends that an informal arrangement between the mother and the prosecutor was the best way to assure that Ostberg would be present.

It is incredible that Ostberg would be less likely to flee if she were under a court order to appear than if her mother merely promised to produce her. By complying with the Uniform Act, the prosecutor could have imposed on Ostberg a legal obligation to appear; whereas here, she was under no compulsion whatsoever. In fact, there was every incentive for her not to appear in light of the conflict between her prior testimony and the letter she wrote sometime later. Moreover, the failure to comply with the Uniform Act creates an inference that the decision was made for tactical benefit, since the prosecution greatly benefited from her disappearance. Ostberg's prior testimony could, under these circumstances, be used without subjecting her to cross-examination about her inconsistent later statements in the letter.

The prosecution failed to meet its burden of establishing Gayle Ostberg's unavailability because the prosecution failed to utilize the Uniform Act. The prosecution did not

even contact Gayle Ostberg, herself, or even procure a promise from her. The informal promise from her mother was a weak alternative when compared to the enforcement mechanism provided by the Uniform Act. Even assuming the best of motives, the prosecution gambled by not having Ostberg subpoenaed. Therefore, it should be required to bear the consequences of her nonappearance—the exclusion of her testimony—and should not be allowed to benefit from it by being allowed to avoid cross-examination of Ostberg as a witness.

### B. *Reliability*

Even if Ostberg was unavailable, her prior testimony at petitioner's preliminary hearing [1] still lacked the requisite indicia of reliability. The majority concludes that the ability to cross-examine Ostberg at the preliminary hearing provided the necessary reliability, but what the majority overlooks is that between the preliminary hearing and trial, Ostberg wrote a letter that not only recanted her earlier incriminating testimony, but also implicated herself in the crime. To say that petitioner's counsel was able to explore this critical development at petitioner's preliminary hearing is unrealistic. Counsel could not cross-examine Ostberg about a letter that had not yet been written.

To say that this testimony bears the necessary "indicia of reliability" creates an inference that the testimony is either unchanged or that it is likely to be consistent with earlier expressions. When new developments cast doubt upon this inference, the testimony obviously becomes unreliable. This does not mean that minor deviations render earlier statements invalid. We all expect subtle differences to occur, however, when material testimony is contradicted by the affiant's later statements, the earlier expressions become suspect.

In this case, Gayle Ostberg changed her story completely. Not only did she exonerate the petitioner, she also implicated herself. Thus, her prior testimony did not bear the required "indicia of reliability"; in fact, her testimony was quite unreliable. Therefore, admission of her testimony also violated the second requirement of *Roberts* as well.

I would reverse.

---

1. In *Barber*, the Court stated: "A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial, simply because its function is the more limited one of determining whether probable cause exists to hold the accused for trial." *Barber v. Page*, 380 U.S. at 725, 88 S.Ct. at 1322.