987 P.2d 976

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Alomalietoa SUA, Defendant–Appellant.**

**No. 21480.**

Intermediate Court of Appeals of Hawai'i.

Aug. 30, 1999.

As Amended Sept. 1 and
Sept. 8, 1999.

Certiorari Granted Sept. 29, 1999.

---

R. Richard Ichihashi, on the briefs, Honolulu, for defendant-appellant.

Bryan K. Sano, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, Honolulu, for plaintiff-appellee.

BURNS, C.J, WATANABE, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We hold that receipt of a witness's grand jury testimony under the past recollection recorded exception to the rule against hearsay at the criminal trial of Defendant–Appellant Alomalietoa Sua (Defendant) violated the right of confrontation guaranteed him by the Hawai'i Constitution. We conclude the witness's grand jury testimony was not imbued with such indicia of reliability as would comport with the substance of the protections afforded under that guarantee. Under such circumstances, we determine that the resulting error was not harmless beyond a reasonable doubt and thus the instant case must be remanded for a new trial.

In light of the remand and possible retrial, we also decide that (1) a witness's pretrial identification of Defendant is admissible under Hawai'i Rules of Evidence (HRE) Rule 802.1(3) (1993), to the extent the witness is capable of testifying substantively about the events, allowing the trier of fact to meaningfully compare the version of the events described pretrial with that given at trial, (2) a witness's pretrial statements purportedly inconsistent with the witness's trial testimony are admissible provided all requirements under HRE Rule 802.1(1)(C) are satisfied, and (3) there was substantial evidence which would otherwise sustain the jury's verdict. Under our disposition of this appeal, we need not reach other issues raised by Defendant.

## I.

Defendant was indicted[1] and charged on July 23, 1997 for robbery in the first degree, as follows:

> On or about the 18th day of June, 1996, in the City and County of Honolulu, State of Hawai'i, [Defendant] ..., while in the course of committing a theft, and while armed with a dangerous instrument, did use force against Jonah Gooman [ (Gooman) ], ... with the intent to overcome that person's physical resistance or physical power of resistance, thereby committing the offense of [r]obbery in the [f]irst [d]egree, in violation of [Hawai'i Revised Statutes (HRS) § ] 708–840(1)(b)(i)[ (1993) ].[2]

On December 30, 1997, the jury returned a verdict of guilty as charged, and on March 9, 1998, Defendant was sentenced. He appeals from the judgment of conviction and sentence.

1. The indictment, filed in the first circuit court (the court), charged Defendant–Appellant Alomalietoa Sua (Defendant) with two counts. Count I, reproduced in the text, charged Defendant with committing robbery in the first degree in violation of Hawai'i Revised Statutes (HRS) § 708–840(1)(b)(i) (1993) through the use of force. Count II likewise charged Defendant with committing robbery in the first degree, but Count II alleged that Defendant "did threaten the imminent use of force" in violation of HRS § 708–840(1)(b)(ii).

 On the first day of trial, prior to jury selection, Plaintiff–Appellee State of Hawai'i (the State) orally moved to nolle prosequi Count II. The court granted the State's motion and dismissed Count II.

2. HRS § 708–840 provides, in relevant part, as follows:

 > (1) A person commits the offense of robbery in the first degree if, in the course of committing a theft:
 > ....
 > (b) The person is armed with a dangerous instrument and:
 > (i) The person uses force against the person of anyone present with intent to overcome that person's physical resistance or physical power of resistance[.]
 > ....
 > (2) As used in this section, "dangerous instrument" means any firearm, whether loaded or not, and whether operable or not, or other weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or threatened to be used is capable of producing death or serious bodily injury.

## II.

The following factual summary is from the grand jury testimony [3] of Gooman taken on July 23, 1997.

Gooman had been acquainted with Defendant for many years. Gooman's grandmother owned two rental units. Defendant's brother, Nelson Sua (Nelson), was a resident of one of the rental units, but had vacated the premises during the spring or summer of 1996.

Gooman was not involved in collecting deposits or refunding deposits for the rental units.[4] However, approximately one week before June 18, 1996, Defendant approached Gooman and asked for the refund of a rent deposit claimed by Nelson.[5] Gooman told Defendant that he "did not know anything about ... the money or anything [sic] to do with the rent."

On June 18, 1996, Gooman was driving a car belonging to his friend, Corey Kaowili (Kaowili). Kaowili was in the front passenger seat and Trent Pauahi (Pauahi) was in the rear seat. When they saw Defendant on the street, Gooman stopped the car because Kaowili wished to speak to Defendant. Defendant entered the rear of the vehicle and requested a ride home.

Defendant again asked Gooman for the deposit. Gooman reiterated that he knew nothing about the money. Eventually Gooman stopped the car, looked back, and saw Defendant "fiddling with a gun."

After demanding that Gooman give him the money, Defendant struck Gooman on the back of the head with the butt of the gun. Gooman related he was struck "[p]retty hard." As a result he felt dizzy and his head was bloodied.

Kaowili offered Defendant money so that he would "leave [Gooman] alone." [6] At first Defendant rejected Kaowili's offer. However, Defendant eventually took the money, instructed Gooman to obtain the balance owed, and alighted from the car. According to Gooman, Kaowili gave Defendant one hundred and twenty dollars.

Gooman further testified that he did not give Defendant permission to possess a gun, to strike him with it, or to demand or take any money.

## III.

During trial, the State called a total of five witnesses: Gooman; Kaowili; Gooman's mother, Marlene Gooman (Marlene); Pauahi; and Honolulu Police Department Lieutenant Derek Shimatsu [7] (Shimatsu). On appeal, Defendant argues that the court erred in (1) permitting Gooman's grand jury testimony to be read to the jury, (2) allowing Shimatsu to testify about Gooman's pretrial identification of Defendant, (3) authorizing Shimatsu to testify about prior inconsistent statements of Kaowili and Pauahi, (4) failing to instruct the jury on the defense of ignorance or mistake of fact, (5) denying Defendant's motion for judgment of acquittal, and (6) upholding a guilty verdict unsupported by substantial evidence.

## IV.

We first examine whether the court erred in allowing Gooman's grand jury testimony to be read to the jury.

## A.

Gooman testified that at the time he appeared before the grand jury he recalled the events of the alleged robbery and was "as accurate as possible" in relating that testimo-

---

**3.** That portion of the transcript of the grand jury hearing containing the testimony of Jonah Gooman (Gooman) was admitted into evidence as State's Exhibit 5. The entire grand jury transcript, however, is not a part of the record.

**4.** At the time of the alleged robbery, Gooman's grandmother, Myrtle, was living on the continental United States. Gooman's mother, Marlene Gooman (Marlene), was collecting the rent due while Myrtle was away. *See infra* note 41.

**5.** According to the record, the rent deposit refund was actually owed to Nelson Sua's girlfriend. *See infra* note 41.

**6.** Trent Pauahi (Pauahi) had previously left the automobile. This fact, however, is not apparent from Gooman's grand jury testimony.

**7.** In June 1996, Honolulu Police Department Lieutenant Derek Shimatsu (Shimatsu) was a detective with the robbery detail assigned to the criminal investigation division.

ny. However, at trial, Gooman asserted his memory was "not good enough to allow [him] to testify fully and accurately":

> Q [PROSECUTOR]. . . . I want to take you back to a few days or a week or so before June 18th, 1996, did [Defendant] approach you concerning getting some money?
>
> A [GOOMAN]. No, I don't remember.
>
> . . . .
>
> Q. Are you saying that these matters you recall[ed] at the [g]rand [j]ury but now you don't recall them?
>
> A. *Yes.*
>
> . . . .
>
> Q. Are you telling this jury that today, as you sit here today, your memory of these events is not good enough to allow you to testify fully and accurately?
>
> A. *Yes.*
>
> Q. But you were able to testify fully and accurately at the [g]rand [j]ury?
>
> A. (Witness nodded affirmatively.) *Yeah.*

At this point, the State offered a transcript of Gooman's grand jury testimony into evidence. The offer was made pursuant to HRE Rule 802.1(4), which permits a statement of past recollection recorded to be re-ceived in evidence as an exception to the rule against hearsay.[8] However, defense counsel objected on the ground that Defendant was "not afforded an opportunity at [the grand jury hearing] . . . for cross-examination of that statement" and thus Defendant would be denied his "sixth amendment right." The State asserted, in response, that HRE Rule 802.1(4) did not require that the prior statement have been subjected to "full and fair cross-examination[,]" as did HRE Rule 804(b)(1) (1993), the hearsay exception for former testimony.[9]

The court initially ruled that admission of the grand jury testimony would result in a denial of Defendant's right to cross-examination. On the next day of trial, however, the court reversed itself. In accordance with HRE Rule 802.1(4), the court directed that the transcript be read to the jury but not made available to the jurors. The prosecutor then read Gooman's grand jury testimony, in its entirety, to the jury.[10]

### B.

### 1.

■ Plainly, Gooman's grand jury testimony was, at trial, hearsay. HRE Rule 801 (1993) defines hearsay as follows:

> ject matter of the declarant's statement, the statement is inconsistent with the declarant's testimony, the statement is offered in compliance with [HRE R]ule 613(b), and the statement was:
> (A) Given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition; or
> (B) Reduced to writing and signed or otherwise adopted and approved by the declarant; or
> (C) Recorded in substantially verbatim fashion by stenographic, mechanical, electrical, or other means contemporaneously with the making of the statement[.]

The court ruled against the State on the basis that Gooman's lack of memory deprived Defendant of effective cross-examination. The court also ruled that Gooman's representation that he did not remember the subject events were not inconsistent with his grand jury testimony, and, as such, did not fall within HRE Rule 802.1(1)(A) or (C). Neither party appeals from these decisions.

---

**8.** The transcript indicates that the State offered the grand jury testimony of Gooman under Hawai'i Rules of Evidence (HRE) Rule "802.1*(c)* (4)"; however, there is no rule so designated in the HRE. Instead, we believe the prosecutor meant to offer Gooman's grand jury testimony under HRE Rule 802.1(4) (1993).

**9.** HRE Rule 804(b)(1) (1993) provides that the former testimony by a witness is not excluded by the hearsay rule if the witness is unavailable:

Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, at the instance or against a party with an opportunity to develop the testimony by direct, cross, or redirect examination, with motive and interest similar to those of the party against whom now offered[.]

Alternatively, the State asserted at trial that Gooman's grand jury testimony was admissible as a prior inconsistent statement under HRE Rule 802.1(1), which provides that inconsistent statements "previously made by [a] witness[ ] who testifi[es] at the trial or hearing are not excluded by the hearsay rule":

Inconsistent statement. The declarant is subject to cross-examination concerning the sub-

**10.** The substance of Gooman's grand jury testimony is discussed in the text, *supra.*

(1) "Statement" is (A) *an oral or written assertion,* or (B) a nonverbal conduct of a person, if it is intended by the person as an assertion.

(2) "Declarant" is a person who makes a statement.

(3) "Hearsay" is *a statement,* other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted.*

(Emphases added.) Gooman·made an oral statement to the grand jury asserting that Defendant threatened him and struck him with a gun. This statement was transcribed into written form. Because at trial Gooman claimed that he did not remember his statement, the State offered the transcript into evidence to prove that the events described therein had indeed occurred. The grand jury testimony was not offered for any other purpose and thus, was hearsay.

### 2.

■ As an exception to the rule against hearsay, past recorded statements may be received in evidence to prove the truth of the matters asserted therein. *See generally* HRE Rules 801, 802, and 802.1. In order to qualify as past recollection recorded, the statement must satisfy certain requirements under HRE Rule 802.1(4):

The following statements previously made by witnesses who testify at the trial . . . are not excluded by the hearsay rule:

. . . .

(4) Past recollection recorded. A memorandum or record concerning a matter about which the witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness'[s] memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an ex-

hibit unless offered by an adverse party.

According to its commentary, HRE Rule 802.1(4) is "identical with" Federal Rules of Evidence (FRE) Rule 803(5). Thus, as with FRE Rule 803(5), under HRE Rule 802.1(4), "[a] record or memorandum is admissible as an exception to the hearsay rule if the proponent can show that the witness once had personal knowledge of the matter, . . . that the record or memorandum was prepared or adopted by [the witness] when it was fresh in his [or her] memory, that it accurately reflected his [or her] knowledge, and that the witness currently has insufficient recollection to enable him [or her] to testify fully and accurately[.]" 31 M. Graham, *Federal Practice and Procedure: Evidence* § 6756, at 321–23 (Interim Edition 1997) (footnotes omitted).

### 3.

■ The grand jury transcript ostensibly satisfies the requirements of HRE Rule 802.1(4). During direct examination, Gooman stated that he recalled the alleged robbery when he testified before the grand jury. Thus, Gooman "once had knowledge" of the matter about which he had testified.

Second, during trial, Gooman agreed that he was able to "testify fully and accurately" about the incident before the grand jury.

Third, because Gooman acknowledged he testified fully and accurately, it may be inferred the grand jury transcript was made when the events were still "fresh in his memory" and accurately reflected his knowledge of the events.[11]

Finally, Gooman testified that at trial, his "memory [wa]s not good enough to allow [him] to testify fully and accurately[.]"

Under these circumstances, the foundational requirements of HRE Rule 802.1(4) were met.

### V.

■ However, "[t]he inherent unreliability of hearsay statements raises special prob-

11. Gooman's grand jury testimony was given over a year after the alleged robbery. However, the timing of Gooman's grand jury testimony is not dispositive in this case.

lems within the context of a criminal case since the [admission of an] out-of-court declaration also involves a [denial of a] defendant's constitutional right to cross-examine and confront the witnesses against him" at trial. *State v. Hoffman,* 73 Haw. 41, 47, 828 P.2d 805, 809 (1992) (internal quotation marks and citation omitted). This constitutional right inheres in article 1, section 14 of the Hawai'i Constitution which guarantees an accused the right to confront witnesses against him or her: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against the accused...." Article I, section 14 is virtually identical to the sixth amendment to the United States Constitution.[12] Thus, while our decision is based only on the Hawai'i Constitution, we find federal decisions construing the confrontation clause of the sixth amendment persuasive authority, as our appellate courts have in other Hawai'i decisions.

 The purpose of the confrontation clause is to ensure a defendant face-to-face examination of a witness at trial and thereby permit the fact finder to evaluate the witness's credibility:

Thus, "the primary object of the constitutional provision in question *was to prevent depositions or ex parte affidavits,* such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, *not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him [or her], and judge by his [or her] demeanor upon the stand and the manner in which he [or she] gives his [or her] testimony whether he [or she] is worthy of belief.*"

*State v. Faafiti,* 54 Haw. 637, 640–41, 513 P.2d 697, 700 (1973) (quoting *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895)) (emphases added) (brackets omitted). Thus, our supreme court has said that the "right of confrontation af-

fords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses." *State v. Ortiz,* 74 Haw. 343, 360, 845 P.2d 547, 555, *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993), *abrogated on other grounds, State v. Moore,* 82 Hawai'i 202, 921 P.2d 122 (1996). *See also Faafiti,* 54 Haw. at 639, 513 P.2d at 700 (holding that "there is no question that a defendant in a criminal case has a fundamental or constitutional right to be confronted with and to cross-examine witnesses against him"); *State v. Adrian,* 51 Haw. 125, 131, 453 P.2d 221, 225 (1969) (holding that the "primary right secured by the confrontation clause is the right of cross-examination, ... a right which this court has recognized is basic to our judicial system") (citation omitted); *State v. Balisbisana,* 83 Hawai'i 109, 115, 924 P.2d 1215, 1221 (1996) (holding that "'the exposure of a witness'[s] motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination'") (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 678–79, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (citations and internal quotation marks omitted)); *State v. Lincoln,* 71 Haw. 274, 278, 789 P.2d 497, 499–500, *reconsideration denied,* 71 Haw. 665, 833 P.2d 900, *cert. denied,* 498 U.S. 907, 111 S.Ct. 277, 112 L.Ed.2d 232 (1990). In the event of any conflict between the two, "the right of confrontation supersedes the effect of any rules of evidence." *Adrian,* 51 Haw. at 133, 453 P.2d at 226.

### VI.

When faced with the question of whether evidence admissible under a hearsay exception is violative of the policies underlying the confrontation clause, our supreme court has generally referred to the two-part test established by the United States Supreme Court in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). *Ortiz,* 74 Haw. at 363, 845 P.2d at 555. In *Roberts,* the United States Supreme Court preliminarily

12. Similarly and in pertinent part, the sixth amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him [or her]...."

observed that a literal application of the confrontation clause "would abrogate virtually every hearsay exception, a result long rejected as unintended and too extreme." *Roberts,* 448 U.S. at 63, 100 S.Ct. 2531. However, it acknowledged that the confrontation clause would exclude some forms of hearsay:

> The historical evidence leaves little doubt ... that the Clause was intended to exclude some hearsay. *See California v. Green,* 399 U.S. [149,] 156–57, and nn. 9 and 10 [90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) ]; *see also* [E. Cleary,] McCormick [on Evidence] § 252, p. 606 [ (2d ed.1972) ]. Moreover, underlying policies support the same conclusion. The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that "a primary interest secured by [the provision] is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418 [85 S.Ct. 1074, 13 L.Ed.2d 934] (1965)....
>
> ....
>
> These means of testing accuracy are so important that the absence of proper confrontation at trial "calls into question the ultimate 'integrity of the fact-finding process.'" *Chambers v. Mississippi,* 410 U.S. 284, 295 [93 S.Ct. 1038, 35 L.Ed.2d 297] (1973)[ ] (quoting *Berger v. California,* 393 U.S. 314, 315 [89 S.Ct. 540, 21 L.Ed.2d 508] (1969)).

*Id.* at 63–64, 109 S.Ct. 333 (some brackets in original) (footnotes omitted). In that connection, *Roberts* adopted "a general approach" in determining that confrontation clause policies restrict the admission of hearsay exceptions at trial in two ways:

> The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment *establishes a rule of necessity.* In the usual case ..., the *prosecution must either produce, or demonstrate the unavailability of, the declarant* whose statement it wishes to use against the defendant.[13]

The second aspect operates once a witness is shown to be unavailable. *Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule."* *Snyder v. Massachusetts,* 291 U.S. [97,] 107 [54 S.Ct. 330, 78 L.Ed. 674 (1934) ]. The principle recently was formulated in *Mancusi v. Stubbs* [, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) ]:

> "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant.' *Dutton v. Evans,* [400 U.S. 74,] 89 [91 S.Ct. 210, 27 L.Ed.2d 213 (1970) ], and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra,* at 161 [90 S.Ct. 1930]. It is clear from these statements, and

---

**13.** We note that as to the rule of necessity, the Hawai'i Supreme Court has "parted ways with the United States Supreme Court which [after *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) ] has held that the sixth amendment confrontation clause does not necessitate a showing of unavailability for evidence falling within certain hearsay exceptions." *State v. McGriff,* 76 Hawai'i 148, 156, 871 P.2d 782, 790 (1994) (citing *United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (statements of a non-testifying co-conspirator may be introduced against the defendant regardless of the declarant's unavailability at trial); *White v. Illinois,* 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (unavailability not required for excited utterance exception)). In-

stead, our supreme court has "remained resolute that under the confrontation clause of the Hawai'i Constitution, '[a] showing of the declarant's unavailability is necessary[.]'" *Id.* (quoting *State v. Ortiz,* 74 Haw. 343, 362, 845 P.2d 547, 556, *reconsideration denied,* 74 Haw. 650, 849 P.2d 81 (1993), *abrogated on other grounds, State v. Moore,* 82 Hawai'i 202, 921 P.2d 122 (1996)). In this same vein, we observe that our appellate courts are "'free to give broader ... protection [under the Hawai'i Constitution] than that given by the federal constitution.'" *State v. Hutch,* 75 Haw. 307, 322, 861 P.2d 11, 14 (1993) (quoting *Baehr v. Lewin,* 74 Haw. 530, 555, 852 P.2d 44, 57, *reconsideration denied and clarification granted in part,* 74 Haw. 645, 852 P.2d 74 (1993)).

from numerous prior decisions of this Court, that *even though the witness be unavailable his prior testimony must bear some of these 'indicia of reliability.'*" [*Mancusi*,] 408 U.S. at 213 [92 S.Ct. 2308].

The Court has applied this "indicia of reliability" requirement principally by concluding that *certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the "substance of the constitutional protection."* *Mattox v. United States,* 156 U.S. at 244 [15 S.Ct. 337].

*Id.* at 65–66, 100 S.Ct. 2531 (emphases added) (some citations omitted).

## VII.

 In this case, the first prong of the *Roberts* test was satisfied. Although present at trial, Gooman was "unavailable" with respect to the substance of his grand jury testimony because of his *"loss of memory."* [14] *State v. Apilando,* 79 Hawai'i 128, 133–34, 900 P.2d 135, 140–41 (1995) (emphasis in original) (citing *Tsuruda v. Farm,* 18 Haw. 434, 438 (1907)). His "unavailability" for purposes of *Roberts* was thus established.

Once Gooman was shown to be "unavailable," the court was required to determine whether his past recollection of the robbery, as embodied in grand jury testimony, rested upon such reliable foundations that admission

14. HRE Rule 802.1(4) requires that the witness be present and "testify at the trial." However, we do not believe that literal satisfaction of this prerequisite necessarily comports with the confrontation clause, especially where, as here, the witness claims a lack of memory as to the underlying substance of his testimony.

15. Cases like *State v. Adrian,* 51 Haw. 125, 453 P.2d 221 (1969), clearly do not govern Defendant's case. Gooman, as a witness before the grand jury, was not subject to cross-examination by Defendant. *See infra* discussion in text. *See, e.g., Moore,* 82 Hawai'i at 223, 921 P.2d at 143 (trial court did not err in admitting a witness's testimony from a bail hearing where the witness was unavailable at trial, the hearsay statement fit within a "firmly rooted hearsay exception[,]" and the defendant had both the opportunity and motive to question the witness on pertinent issues such as the identity of the alleged attacker during the bail hearing); *State v. Bates,* 70 Haw. 343, 346, 771 P.2d 509, 511 (1989) (observing that

of such evidence comported with the "substance of the constitutional protection[s]" afforded by the confrontation clause. *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531. As to the second prong, we conclude as discussed *infra,* that Gooman's grand jury testimony did not comport with such constitutional protections and thus its receipt at trial was violative of Defendant's confrontation rights under the Hawai'i Constitution.

## VIII.

This jurisdiction has not addressed the admissibility of grand jury testimony under the past recollection recorded exception to the hearsay rule. Several of our cases have analyzed the use of a witness's prior testimony at a subsequent trial; however, none of those cases addressed the use of prior grand jury testimony. Those cases permitting admission of prior testimony did so because "an unavailable witness [who] . . . gave testimony at previous judicial proceedings against the same defendant . . . *was subject to cross-examination by that defendant*[.]" *Adrian,* 51 Haw. at 132–33, 453 P.2d at 226 (emphasis added).[15] Those cases concluding that admission of prior testimony violated a defendant's confrontation clause rights have been premised on the prosecution's failure to demonstrate the declaring witness's unavailability, and were not concerned with the reliability of the statement.[16]

"[a]n exception to the right of confrontation allows the admission of the testimony of an unavailable witness who gave testimony at previous judicial proceedings against the same defendant which was subject to cross-examination[,]" and allowing a witness's testimony from a preliminary hearing into evidence where the record established a good faith effort on the part of the prosecution to obtain the witness); *State v. White,* 65 Haw. 286, 288, 651 P.2d 470, 472 (1982) (holding that a witness's testimony from a previous trial, where the defendant had an opportunity to cross-examine the witness, was properly received in evidence where the prosecution made a good faith effort to obtain the presence of the witness).

16. *See State v. Lee,* 83 Hawai'i 267, 269, 925 P.2d 1091, 1093 (1996) (concluding that the prosecution failed to demonstrate the unavailability of witnesses and, thus, the witnesses' testimonies from a preliminary hearing were inadmissible

We recognize that the supreme court has held that statements fitting within hearsay exceptions may properly be admitted at trial without violating the confrontation clause. *See State v. McGriff,* 76 Hawai'i 148, 156, 158, 871 P.2d 782, 790, 792 (1994) (where a hearsay statement was admitted under the co-conspirator exception to the hearsay rule, the supreme court determined that there was no confrontation clause violation where the declarant's refusal to testify made him unavailable, and the statement was reliable because it fell within a "firmly rooted hearsay exception"). *But see State v. Baron,* 80 Hawai'i 107, 108, 905 P.2d 613, 614 (1995) (concluding that a witness's prior videotaped interview was admissible only after the defendant was given an opportunity to cross-examine the witness); *Apilando,* 79 Hawai'i at 141, 900 P.2d at 148; *supra* n. 15. On the other hand, as it did in *Lincoln,* the supreme court has eschewed a "mechanistic application of hearsay exceptions" when the confrontation clause is involved.

In the *Lincoln* case, Kekona, a witness, had been subjected to cross-examination at the defendant's first trial. *Lincoln,* 71 Haw. at 275, 789 P.2d at 498. Following the first trial, Kekona recanted his trial testimony. *Id.* at 276, 789 P.2d at 498. At a subsequent hearing, Kekona recanted his recantation. *Id.* Kekona refused to testify for the prosecution at the second trial. *Id.* The trial court allowed his first trial testimony to be read to the jury and also advised the jury of Kekona's recantations. *Id.*

The supreme court reversed because Kekona's former testimony lacked "necessary indicia of reliability and because [the defendant's] rights under the [c]onfrontation [c]lause of the Hawai'i Constitution ha[d] been violated." *Id.* The supreme court held that the "mechanistic application of the hear-

say exceptions is inappropriate[,]" and pointed out that while the defendant had an opportunity to cross-examine Kekona during the first trial, that "cross-examination ... was rendered inadequate by subsequent events [ i.e., Kekona's recantation of his trial testimony and his recantation of that recantation) ]." *Id.* at 279–80, 789 P.2d at 500. Likewise in this case, we believe that a "mechanistic application of ... hearsay exceptions" would not properly serve the policies of the confrontation clause.

## IX.

■■■ We observe that grand jury proceedings differ markedly from the typical preliminary hearing or trial.[17] The Hawai'i Supreme Court has recognized that " '[a] grand jury proceeding is *not an adversary hearing in which the guilt or innocence of the accused is adjudicated.* Rather, *it is an ex parte investigation* to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person.' " *State v. Bell,* 60 Haw. 241, 243–44, 589 P.2d 517, 519 (1978) (emphases added) (quoting *United States v. Calandra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)). Consequently, " 'the grand jury hear[s] only the prosecutor's side[,]' " and the "prosecution is necessarily given wide discretion in presenting its case to the grand jury." *Id.* at 244–45, 589 P.2d at 520 (quoting M. Frankel & G. Naftalis, *The Grand Jury* 71 (1977)).

■■■ In a grand jury proceeding, "the prosecution is required only to present to the grand jury evidence which is *clearly* exculpatory in nature." *Id.* at 242, 589 P.2d at 518 (emphasis added); *accord State v. O'Daniel,* 62 Haw. 518, 521, 616 P.2d 1383, 1387 (1980); *see also State v. Chong,* 86 Hawai'i 282, 287, 949 P.2d 122, 127 (1997). The prosecution

under the confrontation clause); *State v. Rodrigues,* 7 Haw.App. 80, 83, 742 P.2d 986, 988 (1987) (holding unavailability not shown where the prosecution established at a pre-trial hearing that the witness was unavailable but neglected to reaffirm unavailability on the record at trial); *State v. Kim,* 55 Haw. 346, 347–50, 519 P.2d 1241, 1244–45 (1974) (holding that in a prosecution for negligent homicide arising from a traffic accident, a witness's pre-trial hearing testimony could not be read to the jury during defendant's

trial where the prosecution failed to demonstrate the unavailability of the witness).

**17.** "[T]he grand jury's responsibilities include both the determination of whether there is probable cause to believe that a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *State v. Bell,* 60 Haw. 241, 243, 589 P.2d 517, 519 (1978).

may present hearsay testimony to the grand jury. *O'Daniel*, 62 Haw. at 522–23, 616 P.2d at 1388; *State v. Corpuz*, 67 Haw. 438, 440–41, 690 P.2d 282, 285 (1984). Furthermore, the supreme court has ruled that "the prosecution's use of pre-scripted questions and answers in connection with its grand jury witnesses ... did not so clearly infringe upon the jury's decision-making function and was not so innately prejudicial that the practice—in and of itself—violated [the defendant's] right to due process of law[,]" *Chong*, 86 Hawai'i at 289, 949 P.2d at 129, though there is no requirement that the grand jurors themselves be informed of such a practice.

■■■■ Obviously, then, a grand jury proceeding "is not intended to be a mini-trial." *State v. Kahlbaun*, 64 Haw. 197, 203, 638 P.2d 309, 315 (1981). It has long been recognized in our jurisdiction that "[t]he accused ha[s] no right to appear or to have witnesses heard in his [or her] behalf by the grand jury." *Tong Kai v. Territory of Hawaii*, 15 Haw. 612, 613 (1904). In contrast to the open and public nature of preliminary hearings and trials, the "policy of the law [governing grand jury proceedings] requires secrecy of [those] proceedings." *In re Moe*, 62 Haw. 613, 617, 617 P.2d 1222, 1224 (1980).

In this case, Gooman's grand jury testimony closely resembled a deposition or ex parte affidavit of the sort condemned in *Mattox*, 156 U.S. at 242–43, 15 S.Ct. 337. Obviously, Gooman testified ex parte at the grand jury proceeding. Defendant was not allowed to be present and his defense was not placed before the grand jurors. Unlike the procedure afforded at a preliminary hearing, Defendant had no opportunity to question Gooman. The State was free to develop Gooman's testimony for the grand jury in any manner it chose to, free of any adversarial or judicial intervention. Plainly, Gooman's statement cannot be said to have " 'been given under circumstances closely approximating those that surround the typical trial.' " *Roberts*, 448 U.S. at 69, 100 S.Ct. 2531 (quoting *Green*, 399 U.S. at 165, 90 S.Ct. 1930).

The confrontation clause is intended to "ensure[ ] the defendant an effective means to test adverse evidence." *Id.* at 65, 100 S.Ct. 2531. Defendant was foreclosed from cross-examining Gooman at the grand jury proceeding; hence, there was no means by which he could test the evidence presented against him. Gooman's lack of memory at trial further prevented Defendant from challenging the grand jury statement.

Gooman's grand jury testimony was obviously obtained for the sole purpose of advancing the prosecution against Defendant. The trustworthiness of the recorded recollection exception, however, is premised on the assumption that the statements were *not* "carefully prepared for the purposes of litigation[.]" Commentary to FRE Rule 803(5).[18] Our review establishes that the grand jury procedure is primarily intended to facilitate the government's interest in obtaining an indictment. Accordingly, a hearsay exception for grand jury testimony cannot be said to substantively preserve Defendant's right of cross-examination. *Cf. Roberts*, 448 U.S. at 66, 100 S.Ct. 2531.

### X.

■■■ Based on the foregoing factors, Gooman's grand jury testimony was not "marked with such trustworthiness as to confirm that there [was] no material departure from the reason of the general rule" underlying the confrontation clause. *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531 (internal quotation marks and citations omitted). Therefore, we conclude the grand jury transcript was not imbued with such indicia of reliability that its receipt under the past recollection recorded exception comported with the substance of the constitutional protections afforded under the Hawai'i Constitution's confrontation clause.

### XI.

We find the case of *State v. Woods*, 48 Ohio App.3d 1, 548 N.E.2d 954, 958, *cause dismissed*, 38 Ohio St.3d 715, 533 N.E.2d 783 (1988), supportive. There, the appellate court held that admission of a witness's

---

**18.** Federal Rules of Evidence (FRE) Rule 803(5) is the federal counterpart to HRE Rule 802.1(4).

grand jury testimony as past recollection recorded violated a defendant's right of confrontation.

In that case, the victim, Gandy, was found dead of a gunshot wound. *Id.* at 957. Woods, the defendant, and Porter were questioned. *Id.* Several years later, Meister, who had previously been incarcerated with Woods, told police that Woods had confessed to Gandy's murder. *Id.* Meister testified to this before the grand jury. *Id.* Woods, however, told police, in a recorded interview, that Porter had shot Gandy. *Id.*

At trial, Meister refused to testify [19] "on the grounds that the state had reneged on its promise to protect him while in jail and that he was uncertain as to whether his present recollection accurately reflected the particulars of [the] defendant's confession or had been influenced by what the police had related to him after his grand jury testimony." *Id.* Over defendant's objection, the trial court allowed Meister's grand jury testimony to be read into evidence. *Id.*

Prior to the reading of the transcript, defense counsel was given an opportunity to voir dire Meister. *Id.* at 958. Meister would not answer any questions on cross-examination. *Id.* Following reading of the transcript, Meister "refused [on cross-examination] to verify the truth of his grand jury testimony or to respond to questions regarding the substance of the testimony, and ultimately declined to respond further." *Id.*

The appellate court held that admitting the grand jury testimony as past recollection recorded violated the federal constitution's right to confrontation [20] because Meister could not be subjected to full and effective cross-examination. It stated that "the 'past recollection recorded' exception to the hearsay rule does not deprive an accused of his constitutional right of confrontation provided that the declarant, as contemplated under Evid.R. 803(5), ' "*is testifying as a witness and [is] subject to full and effective cross-examination.*" ' " [21] *Id.* (quoting *State v. Scott*, 31 Ohio St.2d 1, 285 N.E.2d 344, 349 (1972) (quoting *Green*, 399 U.S. at 158, 90 S.Ct. 1930)) (emphasis added). Because Meister was not so subject to cross-examination, his grand jury testimony was held inadmissible.[22] *Id.*

Similarly, we conclude that it was error to allow Gooman's grand jury testimony into evidence under the past recollection recorded exception to the rule against hearsay.

## XII.

 We are thus faced with the question of whether this error was prejudicial or harmless under Hawai'i Rules of Penal Pro-

---

19. In the case before us, Gooman had not refused to testify, but instead, claimed a lack of memory as to the events surrounding the alleged robbery. The effect, for purposes of the right of confrontation, is the same.

20. While not specified, we assume the Ohio appellate court referred to the United States Constitution.

21. There is no difference between the Ohio rule, Evid.R. 803(5), and HRE Rule 802.1(4):

> (5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown *by the testimony of the witness* to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Ohio Rules of Evidence, Evid.R. 803(5) (emphasis added). Like the Ohio rule, HRE Rule 802.1 requires, as a prerequisite to admission of any prior statement by a witness, that the witness who made the prior statement "testify at trial."

22. The appellate court in *State v. Woods*, 48 Ohio App.3d 1, 548 N.E.2d 954, 958, *cause dismissed*, 38 Ohio St.3d 715, 533 N.E.2d 783 (1988), compared the "past recollection recorded" and "present recollection refreshed" exceptions and determined that the grand jury testimony of Meister, who had previously been incarcerated with Woods, the defendant, could not be elicited under the present recollection refreshed exception either. In the present recollection refreshed situation, "the witness looks at the writing to refresh his memory, but then proceeds to testify upon the basis of his present independent knowledge." *Id.* Thus, the witness's testimony, not the prior writing or statement, is evidence. *Id.* In contrast, under past recollection recorded, "the writing itself . . . constitutes substantive evidence." *Id.*

In addition, the appellate court determined that the grand jury testimony was not admissible as former testimony. *Id.* at 959.

cedure Rule 52(a). "Generally, 'before a ... constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' " *State v. Silva,* 78 Hawai'i 115, 125, 890 P.2d 702, 712 (App.1995) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Hence, "if there is a 'reasonable possibility' that the matter complained of 'might have contributed to the conviction,' the error must give rise to reversal." *State v. Pokini,* 55 Haw. 640, 646, 526 P.2d 94, 101 (1974) (quoting *United States v. Porter,* 441 F.2d 1204, 1215 (8th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 238, 241, 30 L.Ed.2d 184 (1971)); *State v. Napeahi,* 57 Haw. 365, 373, 556 P.2d 569, 574 (1976). "In applying the harmless beyond a reasonable doubt standard [we are] required to examine the record and determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." *State v. Malufau,* 80 Hawai'i 126, 131, 906 P.2d 612, 617 (1995) (internal quotation marks and citations omitted).

 Gooman testified at trial that he did not remember the alleged robbery. The transcript of his grand jury testimony, however, described in detail the events leading up to and including that purported incident. Without the opportunity to cross-examine Gooman, the assertions made in his grand jury testimony were left unchallenged. Under the facts of this case, then, we cannot say that receipt of the grand jury testimony in evidence was harmless beyond a reasonable doubt. We believe there is a reasonable

possibility that the jury may have relied on Gooman's grand jury testimony in finding Defendant guilty. Thus, we must vacate the conviction and remand for a new trial.

## XIII.

We are aware that several jurisdictions have held that so long as the foundational requirements are met, grand jury testimony of a witness is admissible as past recollection recorded.[23] *See United States v. Patterson,* 678 F.2d 774, 779–780 (9th Cir.), *cert. denied,* 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982) (concluding that the trial court did not abuse its discretion in determining that the "foundation requirements had been met" and allowing a witness's prior grand jury testimony to be read to the jury where the witness testified at trial that he "did not think he had lied to the grand jury"); *United States v. Barrow,* 363 F.2d 62, 67 (3d Cir.1966), *cert. denied,* 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967) (where government witnesses' prior grand jury testimony failed to refresh their recollection, the trial court did not err in receiving that evidence under the past recollection recorded exception); *People v. Turner,* 210 A.D.2d 445, 620 N.Y.S.2d 434, 434–35 (N.Y.App.Div.1994), *appeal denied,* 85 N.Y.2d 915, 627 N.Y.S.2d 338, 650 N.E.2d 1340 (1995) (concluding that "the past recollection recorded consisting of one witness's [g]rand [j]ury testimony was properly admitted into evidence after testimony established a foundation for its admission"). However, we note that the foregoing cases did not

23. We observe that, generally speaking, courts have concluded that past recollection recorded evidence is admissible and not violative of the confrontation clause. *See United States v. Smalls,* 438 F.2d 711 (2d Cir.), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2261, 29 L.Ed.2d 712 (1971). For instance, in *United States v. Kelly,* 349 F.2d 720, 770 (2d Cir.1965), *cert. denied,* 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966), the second circuit court of appeals said that " '[i]t cannot be doubted that the use of a recorded past recollection ... now occupies a firm and unassailable place in our practice and doctrine.' " (Quoting 3 *Wigmore on Evidence,* § 736 at 70 (3d ed.1940)). The second circuit saw "no reason to overrule these authorities or to question the soundness of their reasoning and the policy that underlies them." *Id.* According to the appellate court, past recollection recorded, like "dying

declarations, prior testimony of deceased witnesses, and indeed virtually all exceptions to the hearsay rule, does not involve any deprivation of the right of confrontation as the Sixth Amendment has been interpreted and construed." *Id.*

Several other jurisdictions have followed *Kelly.* However, discussion of the confrontation clause issue in the cases we reviewed amounted to little more than a reference to the "firm and unassailable" place of past recollection recorded as an exception to hearsay. *See, e.g. United States v. Marshall,* 532 F.2d 1279, 1285 (9th Cir.1976) (holding that admission of a chemist's report under the past recollection recorded exception, where the chemist testified that he did not have any independent recollection of the test performed, did not violate the defendant's right of confrontation).

discuss or decide the defendant's confrontation clause rights in connection with the introduction of grand jury testimony.

One federal court has held that grand jury testimony admitted under past recollection recorded did not violate the defendant's confrontation clause rights. *Carey v. United States*, 647 A.2d 56, 59 (D.C.1994) (relying on *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), and holding that admission of grand jury testimony as past recollection recorded evidence did not violate the defendant's right of confrontation because the witness was "available for cross-examination").

■■■ While "[o]ur state constitutional safeguards 'must *at least* comport with United States Supreme Court standards[,]' " *Silva*, 78 Hawai'i at 117–18, 890 P.2d at 704–05 (emphasis added) (quoting *State v. Grahovac*, 52 Haw. 527, 533, 480 P.2d 148, 152 (1971)), "[i]t is well established that broader rights may be afforded to our citizens under our state constitution than under the federal constitution." *State v. Chow*, 77 Hawai'i 241, 247, 883 P.2d 663, 669 (App.1994). *See also State v. Texeira*, 50 Haw. 138, 142, 433 P.2d 593, 597 (1967) (holding that "federal decisions do not ... prevent this court from extending greater protection in interpreting the state constitution where ... appropriate"). Therefore, insofar as our construction of the Hawai'i confrontation clause may conflict with federal decisions construing the federal constitution's confrontation clause, we confirm that the Hawai'i confrontation clause affords broader rights to Hawai'i's citizens than the federal confrontation clause in the sixth amendment.

## XIV.

Because we remand this case for a new trial, we believe it necessary to consider other points raised by Defendant.

24. The State does not address this argument in its answering brief.

25. The portion of Shimatsu's testimony excerpted by Defendant does not appear to involve an identification of Defendant during the telephone conversation.

## XV.

Accordingly, we examine, next, whether the court erred in allowing Shimatsu to testify about Gooman's prior identification of Defendant.[24]

### A.

At trial, Gooman initially testified that he remembered meeting with Shimatsu, but he didn't remember "anything else." The State asked Gooman if his memory would be refreshed by reviewing a photographic lineup form he had purportedly signed. Gooman said "No," but acknowledged that he had signed the form, picked out Defendant's picture, and a statement on the form identifying Defendant as the culprit was in his writing.

Shimatsu testified that he met with Gooman on July 15, 1996, and that Gooman picked Defendant out from a photographic lineup. Shimatsu also related that Gooman signed the lineup form and "wrote down in his own words and in his own handwriting that [Defendant] was the person that demanded money from him and struck him with the gun."

### B.

On appeal, Defendant argues that the court erred in allowing Shimatsu to testify about Gooman's out-of-court identification of Defendant during the photographic lineup and in a telephone interview.[25] Defendant asserts that "Gooman did not testify as to the circumstances of the prior identification[,] he did not vouch for its accuracy[,] ... [and b]ecause of his lack of memory, he was not available for effective cross-examination."

### 1.

HRE Rule 802.1(3)[26] allows prior out-of-court identifications into evidence under certain circumstances:

26. FRE Rule 801(d)(1)(C) similarly provides for the substantive use of prior identifications:

(d) Statements Which Are Not Hearsay. A statement is not hearsay if—
(1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the state-

The following statements previously made by witnesses who testify at the trial ... are not excluded by the hearsay rule:

(3) Prior identification. The declarant is *subject to cross-examination concerning the subject matter of the declarant's statement, and the statement is one of identification of a person made after perceiving that person*[.]

(Emphasis added.) This exception allows for the "substantive use [at trial] of prior identifications." Commentary to HRE Rule 802.1(3); *State v. Motta*, 66 Haw. 254, 262, 659 P.2d 745, 751 (1983).

■ The admissible "statement" is defined as "one of identification of a person made after perceiving that person[.]" HRE Rule 802.1(3). To satisfy this exception to the hearsay rule, the declarant must be subject to cross-examination concerning the subject matter of the statement. In *State v. Canady*, 80 Hawai'i 469, 480–81, 911 P.2d 104, 115–16 (App.1996), this court examined the prior inconsistent statement exclusion to the hearsay rule under HRE Rule 802.1(1). In doing so, we focused on the specific language of HRE Rule 802.1(1) which, like HRE Rule 802.1(3), requires that a declarant be "subject to cross-examination concerning the subject matter of the [declarant's] statement[.]" *Canady*, 80 Hawai'i at 480, 911 P.2d at 115.

We held that the foregoing language "require[d], as a guarantee of trustworthiness[,] ... that the witness be subject to cross-examination about the subject matter of the prior statement, that is, that the witness be capable of testifying substantively about the

event, allowing the trier of fact to meaningfully compare the prior version of the event with the version recounted at trial[.]" *Id.* at 480–81, 911 P.2d at 115–16; *see* A. Bowman, *Hawaii Rules of Evidence Manual* § 802.1–2 at 491–92 (2d ed.1998). "Consequently, the rule was intended to exclude the prior statements of a witness who could no longer remember the underlying events described in the statement." *Canady*, 80 Hawai'i at 480, 911 P.2d at 115.

Similarly, we conclude the identical language in HRE Rule 802.1(3) requires that the declarant "be capable of testifying substantively about the event" to which the prior identification relates.[27] Accordingly, under HRE Rule 802.1(3), the witness must be amenable to substantive cross-examination of the "identification of a person made after perceiving that person." [28]

As noted earlier, Gooman testified that he had chosen Defendant's picture from a photographic lineup, and that he had signed the photographic lineup form. Thus, Gooman was capable of testifying substantively about this part of the identification process and this evidence was properly admitted. We conclude, however, that the handwritten statement on the form did not fit within the HRE Rule 802.1(3) exclusion.

2.

Gooman did not admit to any memory of writing the statement which referred to Defendant. Hence, he was not capable of testifying substantively about the written statement. *Canady*, 80 Hawai'i at 481, 911 P.2d at 116. Defendant therefore could not subject Gooman to cross-examination on the

---

ment, and the statement is ... (C) *one of identification of a person made after perceiving the person*[.]

**27.** The Hawai'i Supreme Court has previously held that "where the photographic display was not so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification, ... testimony regarding it may be elicited from the witness who made the identification." *State v. Naeole*, 62 Haw. 563, 570, 617 P.2d 820, 826 (1980) (internal quotation marks and citations omitted). The "officer who conducted the photographic lineup may also testify to such identification, ... *but only where the*

*person making it is present at trial, testifies to the prior identification, and is subject to cross-examination.*" *Id.* (emphasis added) (internal quotation marks and citations omitted).

**28.** Because the language in HRE Rule 802.1(3) requires that the witness be capable of testifying substantively about the event, we are not faced with a constitutional inquiry into whether the Hawai'i Constitution's confrontation clause, like that of the United States Constitution, requires only the *opportunity* to cross-examine the person who made the prior identification, as held by the majority in *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988).

statement and the trier of fact had no opportunity to compare the substance of the written statement with Gooman's testimony at trial. We note, however, that defense counsel did not object to the admission of the handwritten statement.

Because this case is remanded on the incorrect admittance of Gooman's grand jury testimony, we believe it is unnecessary to perform a harmless error analysis of this aspect of Defendant's pretrial identification by Gooman. On remand, however, the court must reevaluate the introduction of the handwritten statement on the lineup form in light of the above discussion.[29]

## XVI.

Third, we consider whether the court erred in allowing Shimatsu to testify to Kaowili's and Pauahi's purported prior inconsistent statements. We consider Kaowili's testimony first.

### A.

#### 1.

On direct examination by the State, Kaowili claimed that he did not remember a July 11, 1996 telephone conversation[30] with Shi-

matsu. When questioned about a transcript of that conversation, Kaowili stated that he "never talked to no [sic] detectives[.]" He further denied discussing the events of June 18, 1996 with Shimatsu,[31] and denied that the events took place.[32]

During cross-examination by defense counsel, Kaowili maintained that he did not make a "telephone recorded statement" on July 11, 1996, and indicated he would not be able to answer questions about it.

#### 2.

In offering Shimatsu's testimony regarding Kaowili's statements, the State argued that in contrast to his recorded telephone statement to Shimatsu, Kaowili at trial "specifically denied ... 'driving around in the car on June 18th[,]' seeing Defendant strike Gooman, and 'giving [Defendant] money ... to stop [him] from hitting ... Gooman.'" Defense counsel objected to this part of Shimatsu's offered testimony on the ground that there was a "fundamental inability to cross-examine ... Ka[o]wili regarding the substance of the incident, ... because of [his] alleged lack of memory." The court overruled the objection. Shimatsu testified that Kaowili told him "they [ (presumably Goo-

---

**29.** At a subsequent trial, additional evidence or testimony may be offered which could satisfy the requirements for admission. We cannot properly speculate as to the effect of that possibility.

**30.** According to the record, State's Exhibit 4, which was marked for identification but not admitted into evidence, was an "[a]udiotape recorded statement of Corey Kaowili [ (Kaowili).]" During trial, the prosecutor referred several times to a transcript of Kaowili's audiotape recorded statement. However, the audiotape was not played to the jury or received into evidence. Likewise, a transcript of that audiotape was not read to the jury or received into evidence. The record on appeal does not contain either an audiotape of Kaowili's statement or a transcript of that statement.

**31.** The relevant portions of Kaowili's testimony were as follows:

Q [PROSECUTOR]. And you're telling us that you did not tell the detective about an incident where [Defendant] hit ... Gooman with his gun and you gave him some money, is that what you're telling us?
A. No, I'm not telling you anything cause [sic] I never talk to no detective [sic].

**32.** Kaowili further testified on direct examination as follows:

Q. Were you riding around with [Pauahi] and [Gooman] on June 18th, 1996?
A. *No*, sir.
Q. Okay. Did you see [Defendant] strike [Gooman] with gun on June 18th, 1996?
A. *No*, sir.
Q. Did you give [Defendant] $50 out of your wallet to stop [Defendant] from striking ... Gooman?
A. *No*, sir.
Q. Did you give [Defendant] that $50 in order so that [sic] [Defendant] wouldn't doing [sic] anything worse than he had already done?
A. *No*, sir.
. . . .
Q. And just to be very clear, all those statements that I asked you about concerning [sic] a telephone interview with ... Shimatsu, you're not only claiming you didn't say those statements, but you're claiming that you *never talked with ... Shimatsu; is that correct?*
A. *Yes.*
(Emphases added.)

man, Kaowili, and Pauahi) ] met up with . . . [Defendant] and that [Defendant] . . . did strike . . . Gooman on the head and that [Kaowili] prevented further injury by . . . offering money out of his own pocket." [33]

Shimatsu did not indicate whether he had recorded the telephone interview with Kaowili. Defendant did not raise any additional objections.

## B.

### 1.

Pauahi testified that he had reviewed a transcript of a statement [34] he had purportedly given to Shimatsu. Like Kaowili, Pauahi denied giving Shimatsu details about the alleged robbery.[35]

During cross-examination by defense counsel, Pauahi stated that he did not "recall" making a statement to Shimatsu.

### 2.

Shimatsu testified that he obtained a telephone statement from Pauahi on July 9, 1996. The State then offered Pauahi's statement to Shimatsu as a prior statement "inconsistent" with Pauahi's trial testimony.

33. Defense counsel also expressed concern regarding the "amount of money that was given" and argued that a discussion of that subject would be "misleading." Defendant does not raise this objection on appeal, and we need not address it.

34. According to the record, State's Exhibit 3, which was marked for identification but not admitted into evidence, was an "[a]udiotape recorded statement of [Pauahi.]" During trial, the prosecutor referred several times to a transcript of Pauahi's audiotape recorded statement. However, the audiotape was not played to the jury or received into evidence. Likewise, a transcript of that audiotape was not read to the jury or received into evidence. The record on appeal does not contain either an audiotape of Pauahi's statement or a transcript of that statement.

35. The relevant portions of Pauahi's testimony were as follows:

Q [PROSECUTOR]. You remember telling [Shimatsu]: ["]And his brother them was staying in that building so his older brother told him that, you know, if you need money, go get the down payment from [Gooman] them.["] Do you remember telling that to [Shimatsu]?
A. *No.*

Defense counsel objected, noting that it was not clear whether Pauahi made an inconsistent statement and that "defense has not been able to cross-examine the subject matter."

The court asked whether the prior statement was recorded. The prosecutor stated that he would "bring that out through" Shimatsu.

The court ruled that it would allow Shimatsu to testify as to Pauahi's statements made on July 9, 1996, because Pauahi had "denied those . . . statements" during trial.

Shimatsu then testified that Pauahi revealed he had been riding with Gooman and Kaowili on June 18, 1996, they had picked up Defendant while driving around, and he had left the car at the time of the alleged robbery. When he returned to the car, Pauahi indicated he "observed [Defendant] walking away from the vehicle and he told [Defendant], . . . goodbye, and that when he entered the vehicle, he observed his cousin . . . Gooman had an injury." Shimatsu related that Pauahi asked Gooman, " 'What happened, Cuz [sic]?' And [Gooman] replied[,] '[Defendant] hit me with the gun' and began to explain further what happened." [36]

> . . . .
> Q. Do you remember continuing with [Shimatsu]: ["]So I wen go use [sic] the bathroom. By the time I came back to the car, [Defendant] was already walking away[.")]
> Do you remember telling that to [Shimatsu]?
> A. *No.*
> . . . .
> Q. Did you tell the detective bascially [sic] that you jumped out of the car to use the bathroom, you got back, [Defendant] was walking away from the car. You told [Defendant] okay, you know, see you later. You got in the car and you asked [Gooman] what's wrong, . . . and [Gooman] told you[, O]h, buggah [sic] hit me with the gun.["] You remember telling that to [Shimatsu]?
> A. *No.*
> . . . .
> Q. You remember continuing with [Shimatsu: Gooman's] head was all bleeding [sic] so we took him to emergency and . . . stitch[ed] his head[?]
> A. *No.*
> (Emphases added.)

36. Defense counsel objected to allowing Shimatsu testify as to what Gooman had said to Pauahi.

Shimatsu did not indicate whether he had recorded the telephone interview with Pauahi. Defendant did not raise any additional objections.

### C.

### 1.

 HRE Rule 802.1(1)(C) allows prior inconsistent statements of witnesses into evidence where such statements, among other criteria, were recorded in a "substantially verbatim fashion." [37] HRE Rule 802.1(1)(C) requires the following foundation: (1) "the witness must testify about the subject matter of his or her prior statement so that the witness is subject to cross-examination concerning the subject matter of the prior statements;" (2) "the witness's prior statement must be inconsistent with his or her testimony;" (3) the prior inconsistent statement must be offered "in compliance with HRE Rule 613(b) [ (1993) [38]], which . . . requires that, on direct or cross-examination, the circumstances of the prior inconsistent statements have been brought to the attention of the witness, and the witness has been asked whether he or she made the prior inconsistent statements[;]" and (4) the prior inconsistent statement must have been recorded "in substantially verbatim fashion . . . contemporaneously with the making of the statement." *State v. Clark*, 83 Hawai'i 289, 294–95, 926 P.2d 194, 199–200, *reconsideration denied*, 83 Hawai'i 545, 928 P.2d 39 (1996). Prior inconsistent statements can "be used substantively for the truth of the contents." Commentary to HRE Rule 802.1; *State v. Eastman*, 81 Hawai'i 131, 136, 913 P.2d 57, 62 (1996); *State v. Tomas*, 84 Hawai'i 253, 262, 933 P.2d 90, 99 (App.1997). As set forth *supra*, the record reflects that three of the four requirements were satisfied.

The court ruled that the statement fit within the "excited utterance or present sense impression exception to the hearsay rule." Defendant does not raise this issue on appeal.

37. *See supra* note 9.

38. HRE Rule 613(b) (1993) provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless, on direct or cross-examination, (1) the circumstances of the

Unlike Gooman, who claimed a lack of memory, both Kaowili and Pauahi affirmatively testified that the alleged events of June 18, 1996 did not occur. For this reason, we disagree with Defendant and conclude that Kaowili and Pauahi could be subjected to cross-examination on the inconsistencies between their supposed prior statements and their testimony at trial. *See Eastman*, 81 Hawai'i at 137, 913 P.2d at 63; *Canady* 80 Hawai'i at 480–81, 911 P.2d at 115–16. The fact that defense counsel chose not to examine Kaowili and Pauahi with regard to their inconsistent statements did not affect their availability for cross-examination for purposes of HRE Rule 802.1(1)(C).

As noted, both Kaowili and Pauahi testified that the alleged robbery did not occur. Such testimony was inconsistent with their prior statements to Shimatsu.

As to the HRE Rule 613(b) requirements, during direct examination, the prosecutor asked both Kaowili and Pauahi about making the prior statements, showed them transcripts of their prior statements, and offered to play a tape recording of those statements. In addition, the prosecutor asked both witnesses whether they had made those prior statements, and both Kaowili and Pauahi denied making them.

However, the State failed to submit evidence that the prior statements were "[r]ecorded in substantially verbatim fashion . . . contemporaneously with the making of the statement." During trial, the prosecutor referred to transcripts of Kaowili's and Pauahi's statements several times and apparently was allowed to read from them. The prosecutor also represented to the court that the statements were recorded and that Shimatsu would testify to that fact. The prosecutor, however, neglected to adduce such testimony from Shimatsu.[39]

statement have been brought to the attention of the witness, and (2) the witness has been asked whether the witness made the statement."

39. On February 6, 1998, following trial, the State filed a motion for a finding that Kaowili's and Pauahi's statements were electronically recorded. In the declaration of counsel attached, the prosecutor noted that "[o]ne of the foundational requirements of putting a prior inconsistent statement before the fact finder under [HRE]

### 2.

We must note that Defendant did not raise an objection based on foundational grounds to Shimatsu's testimony about the recorded statements from Kaowili and Pauahi. It appears that prior to trial the State did provide transcripts and copies of the tape recorded statements to Defendant.

 " 'The rule is well settled that evidence even though incompetent, if admitted without objection or motion to strike, is to be given the same probative force as that to which it would be entitled if it were competent.' " *State v. Wallace*, 80 Hawai'i 382, 410, 910 P.2d 695, 723 (1996) (quoting *Wharton's Criminal Evidence* § 265 n. 3 (14th ed.1986)) (some internal quotation marks and citation and brackets omitted). Further, "an issue raised for the first time on appeal will not be considered by the reviewing court. Only where the ends of justice require it, and fundamental rights would otherwise be denied, will there be a departure from these principles." *State v. Naeole*, 62 Haw. 563, 571, 617 P.2d 820, 826 (1980) (citation omitted).

Under our disposition of this appeal, we need not decide whether Defendant's apparent waiver of the State's failure to prove the telephone statements were recorded in "a substantially verbatim fashion" was harmless error. On remand, however, we instruct the court to reexamine the introduction of such statements in light of the above discussion.

### XVII.

Because this case is remanded for a new trial, Defendant's contention that the court committed plain error in not instructing the jury on the ignorance or mistake of fact

---

Rule 802.1(1)(C) is that the prior inconsistent statement must have been '[r]ecorded in substantially verbatim fashion by[ ] ... electrical[ ] ... means contemporaneously with the making of the statement.' " According to the prosecutor, after trial, he "learned that he had in fact overlooked asking ... Shimatsu whether the statements of Kaowili and P[a]uahi had been recorded as they spoke." The prosecutor further stated that "[i]n fact, both ... statements were electronically recorded[,]" and that copies of the audiotapes and transcripts had been provided to Defendant in discovery.

---

defense need not be addressed. Generally speaking, the giving of instructions is contingent upon the evidence adduced at trial. *See State v. McMillen*, 83 Hawai'i 264, 265, 925 P.2d 1088, 1089 (1996).

### XVIII.

Finally, Defendant's assertions that the court erred in denying his motion for judgment of acquittal and that the verdict was not supported by substantial evidence must be rejected.

### A.

 "On appeal, the test for determining whether the trial court erred in refusing to grant a motion for judgment of acquittal is whether the evidence presented was such that a reasonable mind might fairly have concluded the defendant's guilt beyond a reasonable doubt." *State v. Lee*, 75 Haw. 80, 110, 856 P.2d 1246, 1262 (1993); *State v. Rivera*, 62 Haw. 120, 128, 612 P.2d 526, 532 (1980). We conclude, based on the following discussion on Defendant's nonsubstantial evidence point, that a reasonable mind might fairly conclude Defendant was guilty beyond a reasonable doubt. The court, therefore, did not err in denying Defendant's acquittal motion.

### B.

 An appellate court determines whether there was substantial evidence to sustain a conviction "upon review of the evidence adduced in [a] light most favorable to the prosecution." *Naeole*, 62 Haw. at 565, 617 P.2d at 823. In this case, the State was required to prove that Defendant, in the course of committing a theft, and while armed with a dangerous instrument, used force against Gooman with intent to over-

---

At a hearing held on March 9, 1998, defense counsel stated that the defense's position was "that [the State's motion] should have been brought up in trial in terms of it being foundation[.]" The court denied the State's motion, finding that the issue should have been raised during trial and that this was not "a proper area for the court to hear testimony on since the trial ha[d] already concluded and a verdict reached[.]"

98

come Gooman's physical resistance or physical power of resistance. HRS § 708–840(1)(b)(i). *"[B]ased only on the evidence that was properly admitted at trial,"* Wallace, 80 Hawai'i at 414 n. 30, 910 P.2d at 727 n. 30 (emphasis in original), and viewing such evidence in a light most favorable to the prosecution, we believe that there was credible evidence which was of sufficient quality and probative value to enable a person of reasonable caution to conclude that Defendant was guilty beyond a reasonable doubt. *State v. Pone,* 78 Hawai'i 262, 265, 892 P.2d 455, 458 (1995).

█ At trial, Gooman confirmed that when presented with a photographic lineup, he had identified Defendant as the person who demanded money and attacked him. Such pretrial identification was not "merely ... corroborative evidence, but ... substantive proof of identity of the perpetrator of the crime." *Motta,* 66 Haw. at 263, 659 P.2d at 751. This testimony alone, then, would be sufficient to enable a person of reasonable caution to conclude Defendant was guilty. The prior inconsistent statements of Kaowili and Pauahi corroborated Gooman's identification of Defendant and the use of a gun and force against Gooman.[40] Marlene testified that she observed an injury to Defendant's head on the date of the incident.[41] Based on the foregoing, we conclude that there was substantial evidence to have supported the jury's verdict.

### XIX.

Therefore, we vacate the March 9, 1998 judgment of conviction and sentence and remand the case for a new trial.

█

40. Assuming it was harmful error to have admitted the inconsistent statements of Kaowili and Pauahi, Gooman's and Marlene's testimonies constituted substantial evidence of Defendant's guilt.

41. Marlene testified, in relevant part, that during the summer of 1996, she managed the rental property in which Defendant's brother, Nelson, resided. According to Marlene, Nelson and his girlfriend vacated the rental property. Although Nelson repeatedly asked for return of the rental

deposit, Marlene indicated she was reluctant to give the deposit to Nelson since he was not a party to the lease.

Marlene also stated that her son, Gooman, was not involved in managing the rental units. She reported she saw Gooman on June 18, 1996, after he had been to the hospital, and there was "blood on his shirt[,] ... he was holding his head[, and] he had a stitch on the back of his head."